TRINITY UNIVERSAL INSURANCE COMPANY and Trinity Lloyd's Insurance Company, Appellants,

v.

Nicole COWAN, Individually and as Assignee of Gregory D. Gage, Appellee.

No. 03–94–00404–CV.

Court of Appeals of Texas, Austin.

Aug. 16, 1995.

Rehearing Overruled Oct. 11, 1995.

---

Jack McKinley, Hirsch, Robinson, Sheiness & Glover, Houston, for appellants.

Ray Chester, Chester & Allen, L.L.P., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and B.A. SMITH, JJ.

CARROLL, Chief Justice.

Appellee Nicole Cowan took a default judgment in a personal injury lawsuit against Gregory Gage in the amount of $250,000 in actual and punitive damages. Gage was covered by a Texas homeowners insurance policy issued by Trinity Lloyd's Insurance Company; therefore, Cowan sued Trinity Universal Insurance Company and Trinity Lloyd's Insurance Company ("Trinity") in the instant cause. Cowan obtained a partial summary judgment on March 30, 1994, in which the trial court found insurance coverage but did not adjudicate damages. On May 9, 1994, the trial court rendered final judgment for Cowan in the amount of $373,225, representing the amount of the underlying judgment, accrued interest, and attorney's fees. Trinity challenges the trial court's judgment in four points of error. We will affirm the judgment of the trial court.

## BACKGROUND

In January 1992, Trinity issued a homeowners insurance policy to the parents of Gregory Gage, under which Gage was an additional insured. The cause of action giving rise to the underlying suit developed while Gage was employed as a photo lab clerk at H.E.B. Photo Place. A roll of film containing pictures of Cowan was delivered to H.E.B. for developing. Some of the pictures were provocative, and Gage made extra prints of several of the photographs and took them home. He later showed the pictures to a few of his friends and left the pictures with one friend with instructions to throw them away when he was through with them. It is undisputed that Gage never intended to injure Cowan in any way. However, the friend Gage entrusted with the pictures disregarded his instructions and showed the pictures to an individual who turned out to be Cowan's

friend. Cowan thereby learned of Gage's actions.

Cowan filed the underlying lawsuit against Gage and H.E.B., alleging negligence and gross negligence, among other claims. Gage notified Trinity of the lawsuit and requested a defense and indemnity. Although Trinity initially provided Gage with a defense under a reservation of rights, upon investigation of Cowan's claims Trinity concluded that her damages were not covered by the insurance policy and denied Gage coverage and any further defense. Gage subsequently agreed to assign any and all claims he had against Trinity to Cowan in exchange for a covenant not to execute against any of his assets except for the homeowners insurance policy, and the case proceeded to trial on May 17, 1993. Gage failed to appear, and Cowan put on evidence before the trial court. After hearing the evidence, the trial court found that Gage's negligence and gross negligence proximately caused Cowan's injuries and rendered a $250,000 judgment against him.

Cowan then filed the instant suit against Trinity. She asserted a direct claim against Trinity as judgment creditor of its insured, and she also alleged as assignee of Gage that Trinity had committed various common law and statutory bad faith insurance practices that caused damage to Gage. The parties filed cross-motions for summary judgment. Cowan moved for partial summary judgment solely on the issue of insurance coverage, and Trinity moved for summary judgment on the issue of insurance coverage as well as bad faith. After a hearing, the trial court granted Cowan's motion for partial summary judgment and denied Trinity's motion, leaving many issues for resolution at trial, including damages, Trinity's liability under various bad faith causes of action, and attorney's fees.

On the eve of trial, Cowan and Trinity settled the case. The Compromise and Settlement Agreement essentially provided that Trinity would agree to a judgment in the amount of the $250,000 underlying judgment, postjudgment interest, and $100,000 in attorney's fees, and in exchange Cowan waived all claims for extracontractual damages over and above the aforementioned sums. The settlement agreement expressly reserved Trinity's right to appeal the issues of coverage and the amount of the underlying judgment:

2. On appeal, Trinity Lloyd's is limited to raising only two issues; (1) whether the Court's rulings on insurance coverages in the [summary judgment] Order dated March 30, 1994 were correct, and (2) whether Trinity Lloyd's is bound by the face amount ($250,000) of the Final Judgment in the underlying case attached hereto as Exhibit A.

3. Solely for the purposes of appealing issue No. 2 as set forth in paragraph 2 above, the following facts are stipulated:

 \* \* \* \* \* \*

g. $100,000.00 is a reasonable and necessary attorneys' fee for plaintiff and plaintiff is entitled to $100,000.00 as an attorneys' fee in the event Trinity Lloyd's does not prevail on appeal.

The final judgment, which was "approved as to form" by the parties, was signed at an uncontested docket on May 9, 1994.

## DISCUSSION

### A. Effect of the Settlement Agreement and Final Judgment

■ We must dispose of a preliminary issue Cowan raises before addressing the four points of error Trinity advances. Cowan contends that this appeal should be dismissed, or alternatively, the trial court's final judgment should be affirmed because Trinity agreed to the final judgment below. According to Cowan, although the settlement agreement "contemplates" an appeal, the agreement does not state that the settlement was subject to an appeal nor did Trinity expressly reserve the right of appeal in either the settlement agreement or the "agreed final judgment." Moreover, argues Cowan, Texas law does not allow an appeal from an agreed final judgment.

■ A party cannot appeal from or attack a judgment to which he or she consented or agreed. *See Gillum v. Republic Health Corp.,* 778 S.W.2d 558, 562 (Tex.App.—Dallas 1989, no writ). However, the final judgment in the instant cause was not an agreed judgment. The judgment states that the settle-

ment agreement "had been entered into allowing the entry of this final judgment." Cowan argues that this statement, coupled with the fact that the judgment was attached to the settlement agreement as an exhibit and the fact that the agreement specifically stated that Cowan would present the judgment to the trial court for signature, establishes that this was an agreed judgment. We disagree.

■ This Court must look to the circumstances surrounding rendition of the final judgment and the recitations in the final judgment to determine if in fact it was "agreed." *See Hill v. Bellville Gen. Hosp.*, 735 S.W.2d 675, 678 (Tex.App.—Houston [1st Dist.] 1987, no writ). In examining the circumstances surrounding rendition of the final judgment in the instant cause, our primary concern is to ascertain the intent of the parties when they entered into the settlement agreement pursuant to which the judgment was rendered. *See Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 520 (Tex. 1984). The parties entered into the settlement agreement to facilitate resolution of the case. In its partial summary judgment, the trial court had determined that Trinity was liable under the insurance policy. The parties then entered into the settlement agreement instead of proceeding to trial to adjudicate the remaining issues of damages, Trinity's liability under various bad faith causes of action, and attorney's fees. In the settlement agreement, Trinity expressly reserved the right to appeal the issues of coverage and the amount of the damages in the underlying suit. In addition, the judgment itself evidences the fact that the parties did not intend to enter into an agreed judgment—the parties approved the judgment "as to form" only, not "as to form and substance." *See Hill*, 735 S.W.2d at 678.

Cowan argues that even if Trinity reserved the right to appeal the coverage issue, this Court should dismiss the appeal or, alternatively, affirm the trial court's judgment because her extracontractual and bad faith causes of action are sufficient to support the final judgment, contending that the settlement agreement itself specifies that the release of "extracontractual and bad faith common law and statutory causes of action" does not release liability under those theories up to the amount of the "agreed final judgment." Cowan cites *State Farm Fire & Casualty Co. v. Gandy*, 880 S.W.2d 129 (Tex. App.—Texarkana 1994, writ granted), for the proposition that an insurance company can be liable to its insured for the way a claim was handled even if it is ultimately determined that there was no coverage. However, this argument is also contrary to the intent of the parties in entering into the settlement agreement. The parties expressly anticipated an appeal on the issues of coverage and the amount of the underlying judgment when they entered into the agreement, and these are the exact issues Trinity raises in this appeal. For these reasons, we will address the merits of Trinity's appeal.

## B. Is Cowan's Claim Covered by the Insurance Policy?

The homeowners policy Trinity issued to the Gages requires that any "bodily injury" or "property damage" must have been caused by an "occurrence" to fall within the scope of coverage. In its first and second points of error, Trinity argues that the trial court erred in granting Cowan's motion for partial summary judgment because there was neither an "occurrence" nor "bodily injury" required to trigger insurance coverage.

The standards for reviewing a motion for summary judgment are well established:

(1) The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

### 1. Meaning of "Occurrence"

 Trinity's first point of error raises the issue of the meaning of "occurrence" under the homeowners policy issued to the Gages. The Trinity policy defines "occurrence" as "an *accident,* including exposure to conditions, that results in *bodily injury* or *property damage* during the policy period." (Emphasis added.) Cowan contends that the meaning of "occurrence" has been established by a long line of Texas precedent. An occurrence, Cowan urges, "takes place where the resulting injury or damage was unexpected or unintended, regardless of whether the policyholder's acts were intentional." *Hartford Casualty Co. v. Cruse,* 938 F.2d 601, 605 (5th Cir.1991) (applying Texas law). According to Cowan, because it is undisputed that Gage did not intend to injure her,[1] there was an unintentional injury, and thus an "occurrence," triggering coverage under the policy.

Trinity urges us to interpret occurrence to restrict coverage to exclude intentional conduct resulting in an unintentional injury. Under Trinity's definition of occurrence, a policyholder is denied coverage for deliberate tortious acts, even if the resulting injury or damage is unintentional. In order to distinguish the line of cases Cowan cites, Trinity argues that the Texas homeowners policy had been revised effective October 1, 1990, and that the cases Cowan cites interpret the former occurrence definition rather than the definition at issue in the instant cause. However, Trinity cites no authority supporting its restrictive definition.

We hold that an occurrence takes place where the resulting injury or damage was unexpected or unintended, regardless of whether the policyholder's acts were intentional. Occurrence is defined under the Trinity homeowners policy as an "accident." Since accident is not defined in the policy, we

consider the term's generally accepted meaning. *See Birdwell v. Ferrell,* 746 S.W.2d 338, 340 (Tex.App.—Austin 1988, no writ). Under Texas law, the word accident has long been held to include unforeseen and unexpected consequences of otherwise intentional acts. Under this interpretation, if the insured did not know or anticipate that his intentional act would produce the injury, then as to the insured the injury produced was unexpected, unforeseen, and, therefore, accidental. *See, e.g., Republic Nat'l Life Ins. Co. v. Heyward,* 536 S.W.2d 549, 557 (Tex. 1976); *Pacific Mut. Life Ins. Co. v. Schlakzug,* 143 Tex. 264, 183 S.W.2d 709, 711 (1944); *Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501, 503 (Tex.Civ.App.—Texarkana 1979, no writ); *see also State Farm Fire & Casualty Co. v. S.S.,* 858 S.W.2d 374, 377 (Tex.1993).[2]

Our holding derives further support from the comments of Don Olson, Chairman of the Readable Homeowners Advisory Committee. This committee was charged with recommending changes to the standard Texas homeowners policy. When the 1990 revision of the Texas homeowners policy was presented to the Texas Board of Insurance, Chairman Olson informed the Board:

What we have accomplished is a revision of every one of the homeowner forms and endorsements, and this will be presented today. And this was accomplished in line with your charge of making sure that there is no restriction in coverage available to any insured under an existing homeowners policy in Texas.

*Hearing on Property Insurance Rules Concerning Texas Homeowners Policy and Related Matters Before Texas State Board of Insurance,* Board Docket No. 1715, at 5 (Feb. 14, 1990) (transcript available from State Board of Insurance).[3] Before the 1990 revision, the term occurrence encompassed

---

1. In its brief, Trinity acknowledges that "[t]he only thing Gregory Gage did *not* intend was Nicole Cowan finding out what he had done."

2. In *S.S.,* the supreme court held that damage may be unintended though the acts causing the damage were intentional. Although the case involved an intentional-injury exclusion, not an occurrence provision, the supreme court looked to *Republic National* and the construction of the term "accidents" in reaching its holding, recog-

nizing that "the same reasoning applies in cases when the policy contains an intentional injury exclusion." *S.S.,* 858 S.W.2d at 377. Therefore, *S.S.* provides persuasive guidance for our analysis.

3. Although the transcript of the hearing was not a part of the record on appeal, this Court has the authority to take judicial notice of it. Rule 201(b)(2) of the Texas Rules of Civil Evidence provides that "[a] judicially noticed fact must be

claims for unintentional injuries resulting from intentional acts. Because the 1990 revision was not intended to restrict coverage, policies issued after the revision must also cover unintentional injuries resulting from intentional acts.

Therefore, Gage's conduct fits within the policy definition of occurrence so long as he neither expected nor intended to cause Cowan's resulting injuries. As even Trinity concedes, Gage neither intended nor knew with substantial certainty that Cowan would be injured. However, Trinity attempts to argue on appeal that Gage's intent to injure was at least a fact issue incapable of summary disposition on the ground that Gage could have reasonably expected Cowan's injuries to result from his actions. We reject this argument because Trinity failed to make intent to injure a fact issue in its motion for summary judgment and response to Cowan's motion. Trinity produced no summary-judgment proof on the issue of Gage's intent to injure; instead, Trinity relied on its defense that the voluntary and intentional nature of Gage's conduct rendered Cowan's claim outside the coverage of the policy. Cowan has established as a matter of law that an intentional act falls within the scope of coverage if it results in unintentional injuries, and Cowan's undisputed summary judgment evidence established that Gage neither intended to injure Cowan nor expected her to find out about the unauthorized prints. We accordingly overrule Trinity's first point of error.

### 2. Meaning of "Bodily Injury"

██ In its second point of error, Trinity complains that the trial court erred in grant-ing Cowan's motion for partial summary judgment because Cowan neither alleged nor proved "bodily injury" within the coverage of the insurance policy. According to Trinity, Cowan's alleged "mental anguish" is not bodily injury under Texas law. *See Travelers Indem. Co. v. Holloway,* 17 F.3d 113, 115 (5th Cir.1994) (holding that "in the context of the policy at issue and the facts alleged here," allegations of mental anguish do not trigger bodily injury coverage under a Texas homeowners policy); *see also SL Indus., Inc. v. American Motorists Ins. Co.,* 128 N.J. 188, 607 A.2d 1266, 1273–74 (1992) (concluding that mental anguish, "without physical manifestations," is not bodily injury). Cowan responds that because the phrase bodily injury encompasses emotional distress with accompanying physical manifestations, she alleged and proved bodily injury within the policy language.

We hold that an allegation of mental anguish or emotional distress is sufficient to support evidence and damages for the accompanying physical manifestations. *See Bulgerin v. Bulgerin,* 724 S.W.2d 943, 945 (Tex. App.—San Antonio 1987, no writ) ("Since physical manifestations of mental anguish or distress were closely interrelated and, in fact, *inseparable* from mental anguish, they cannot be construed to constitute a new or different cause of action or a departure from the pleadings.") (emphasis added); *see also Mokry v. University of Tex. Health Science Ctr.,* 529 S.W.2d 802, 805 (Tex.Civ.App.— Dallas 1975, writ ref'd n.r.e.).[4] Cowan alleged damages for mental anguish in her

---

one not subject to reasonable dispute in that it is ... (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Tex.R.Civ.Evid. 201(b)(2). Rule 201(f) authorizes judicial notice to be taken "at any stage of the proceeding." *Id.* 201(f). We acknowledge that an appellate court should be reluctant to take judicial notice when the trial court was not requested to do so and was not given an opportunity to examine the necessary source material. *See Sparkman v. Maxwell,* 519 S.W.2d 852, 855 (Tex.1975). However, the fact that the trial court was not requested to take judicial notice of the hearing transcript in the *instant* cause is inconsequential because the transcript merely supports the trial court's determination that Cowan's claim was covered by the insurance policy.

4. No Texas court has determined whether pure mental anguish constitutes bodily injury, as acknowledged by the Fifth Circuit in *Holloway.* 17 F.3d at 115. Cowan argues that *McGovern v. Williams,* 741 S.W.2d 373 (Tex.1987), supports her proposition that pure mental anguish constitutes bodily injury. In *McGovern,* the supreme court was called on to decide whether loss of consortium is a separate bodily injury to a spouse for purposes of applying the minimum insurance policy limits contained in a couple's insurance policy. The case turned on the construction of the phrase bodily injury as used in the insurance statute. *Id.* at 374. The court held that the wife could not recover the policy limit for loss of consortium because it was a purely derivative claim that arose as a conse-

pleadings, and the evidence at the trial of the underlying case established that she suffered from headaches, stomachaches, and loss of sleep as a result of her emotional distress.

According to Trinity, a plaintiff's pleadings must allege bodily injury; an allegation of "mental anguish" does not raise a claim for the resulting physical manifestations. In support of its argument, Trinity cites *Holloway* and the "complaint allegation rule." However, Trinity's arguments are unpersuasive. *Holloway* is distinguishable because it involved pure mental anguish with no mention of any accompanying physical manifestations. The court explained, "To determine whether the policy covers the ... lawsuit, we look to the facts of the underlying claim. There are not facts in the record evincing any injury other than emotional distress." *Id.* at 115 (citation omitted). The court's holding thus rested in part upon the facts of the underlying claim, which failed to include evidence of physical manifestations. In contrast, the evidence in the underlying case in the instant cause revealed physical manifestations of Cowan's mental anguish.

The complaint allegation rule Trinity cites enables an insurer to rely on the plaintiff's allegations in determining whether the facts are within coverage. *See Fidelity & Guaranty Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982). However, we have concluded that an allegation of mental anguish implicitly raises a claim for the resulting physical manifestations. We hold that the trial court did not err in granting summary judgment to Cowan because she pleaded and proved bodily injury within the scope of the homeowners policy and, therefore, overrule Trinity's second point of error.

## C. Can an Insurer Challenge Reasonableness of Damages Found in Underlying Case?

■ Before we address the merits of Trinity's third and fourth points of error, we must dispose of Cowan's contention that Trinity's third and fourth points of error cannot serve as a basis for reversal of the trial court's judgment because neither ground was presented to the court in the response to Cowan's motion for partial summary judgment. *See* Tex.R.Civ.P. 166a(c) ("[I]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979). Cowan further argues that neither issue was presented to the trial court at any other time before rendition of the final judgment. *See Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex.1982) ("The reason for the requirement that a litigant preserve a trial predicate for complaint on appeal is that one should not be permitted ... to complain about an error at trial and then surprise his opponent on appeal....").

While Cowan's arguments would be persuasive in the context of a summary judgment disposing of all matters in controversy, the instant cause involved a partial summary judgment, which resolved only the issue of insurance coverage. The settlement agreement pursuant to which final judgment was rendered specifically provided that Trinity reserved the right to appeal the issue of whether Trinity was bound by the $250,000 face amount of the underlying judgment. Therefore, we will address Trinity's remaining two points of error.

■ In its third point of error, Trinity challenges the reasonableness of the $250,000 underlying damage award. According to Trinity, Gage breached his obligation to defend Cowan's lawsuit against him with due diligence and reasonable prudence, thus precluding enforcement against Trinity of the

---

quence of injuries to her husband. *Id.* In explaining its decision, the court suggested that a direct claim for either physical harm *or* mental anguish constitutes bodily injury under the statute:

Loss of consortium, therefore, does not involve any allegation of physical harm, nor does it include an element of mental anguish. Mental anguish is a cause of action separate and distinct from loss of consortium. In the present case, Mrs. McGovern neither alleged physical harm nor mental anguish. Her claim for loss of consortium, therefore, cannot constitute a claim of "bodily injury."

*Id.* at 374–75 (citation omitted). While this language suggests that pure mental anguish constitutes bodily injury, we need not decide this issue.

resulting excessive damage award. In response, Cowan contends that Trinity is barred from collaterally attacking the reasonableness of the underlying damage award.

In *Employers Casualty Co. v. Block*, 744 S.W.2d 940 (Tex.1988), the supreme court unequivocally held that an insurer was barred from collaterally attacking the reasonableness of damages in an agreed judgment between the insured and the injured party—herein Gage and Cowan. *Id.* at 943. "A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." *Ranger Ins. Co. v. Rogers*, 530 S.W.2d 162, 167 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). In *Ranger Insurance*, a case cited with approval in *Block*, this Court noted that an insurance company was not a stranger to a suit against its insured because the insurer had notice of the suit and had been offered the opportunity to defend the suit. Therefore, the insurance company was barred from collaterally attacking the terms of a consent judgment between the insured and the injured party. *Id.*

In an effort to distinguish *Block*, Trinity cites section 75 of the Restatement of Judgments and contends that insureds, "being among the class of indemnitees covered by section 75," must defend themselves with "due diligence and reasonable prudence" as a condition of indemnification, or "the adversary process that *justifies* collateral estoppel is absent." *See* Restatement (Second) of Judgments § 75 (1982). However, Trinity's argument fails to distinguish between a *collateral attack* of a final judgment and the doctrine of *collateral estoppel*, which bars relitigation of specific issues. The supreme court in *Block* clarified the distinction:

> "A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose." Collateral estoppel refers to issue preclusion because it bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in the prior suit.

*Block*, 744 S.W.2d at 943 (citations omitted). In *Block*, the supreme court addressed two separate issues: (1) whether an insurer can collaterally attack an agreed judgment by litigating the reasonableness of the damages;

and (2) whether collateral estoppel bars the insurer from contesting coverage in the claimant's suit against the insurer. With regard to the latter issue, the court held that because the agreed judgment between the insured and the injured party did not establish coverage, the insurer was free to contest coverage "since this does not constitute a collateral attack on the liability judgment." *Id.* The court then went on to determine whether the doctrine of collateral estoppel applied to bar litigation of the coverage issue and held that the insurer was not precluded from litigating the issue of coverage. With regard to the first issue, the court clearly held that an insurer cannot *collaterally attack* the reasonableness of the underlying damage award. We are thus unpersuaded by Trinity's attempts to distinguish *Block*'s holding.

A collateral attack may be made upon a judgment in limited circumstances involving the jurisdiction or capacity of the court rendering judgment. *Id.* Trinity attempts to collaterally attack the underlying judgment upon neither of these grounds but instead upon the ground that the amount of the underlying judgment was unreasonable because Gage failed to diligently defend himself against Cowan's claims. The unreasonableness of the underlying judgment is not a permissible ground for a collateral attack. *Id.* Trinity makes much of the fact that after Gage entered into an agreement assigning his claims against Trinity to Cowan in exchange for her covenant not to execute, he failed to appear at trial to defend himself and thus allowed entry of a default judgment. Trinity argues that because Gage failed to defend himself against Cowan's claims, Trinity should not be bound by the amount of the underlying judgment. However, both *Block* and *Ranger Insurance* involved consent judgments in which the insured made no attempt to put on a defense against the injured plaintiff.

Thus, it is clear that an insured's failure to defend himself diligently does not provide the insurer with grounds for collaterally attacking the underlying judgment. We hold that where a judgment is rendered against an insured, the insurer is bound by

the amount of the underlying judgment. We accordingly overrule Trinity's third point of error.

### D. Is Apportionment of Damages Required?

 Trinity argues in its fourth point of error that the trial court erred in rendering judgment for Cowan in the amount of the underlying judgment without apportioning covered damages for bodily injury from the non-covered damages for mental anguish. Trinity reasons that even if Cowan was entitled to recover damages for the physical manifestations of her mental anguish, the homeowners policy did not cover her remaining damages arising from her mental anguish. In response, Cowan contends that apportionment of damages was not required because physical manifestations of emotional distress are inseparable from the underlying emotional distress and because the policy at issue in the instant cause makes no mention of an apportionment of damages. We agree with both contentions.

We have already determined that a plaintiff's emotional distress and resulting physical manifestations constitute bodily injury. We reject Trinity's more restrictive view that only the physical manifestations resulting from mental anguish constitute bodily injury because the accompanying physical manifestations are inseparable from the underlying mental anguish. Therefore, apportionment was unnecessary because all of Cowan's damages constitute bodily injury.

Moreover, the policy at issue plainly provides that if suit is brought for bodily injury caused by an occurrence to which coverage applies, the insurer will pay "for the damages for which the *insured* is legally liable." We have previously rejected Trinity's apportionment argument in a case involving similar policy language. In *American Home Assurance Co. v. Safway Steel Products Co.,* 743 S.W.2d 693 (Tex.App.—Austin 1987, writ denied), the insurer argued that the insurance policy did not cover punitive damages. The insurance policy at issue provided that the insurer agreed to pay "all sums" which the insured became legally obligated to pay as "damages." This Court held that the term "damages" encompassed both punitive and compensatory damages, reasoning that the average insured would expect protection against liability for all sums that the insured became obligated to pay. *Id.* at 702. In the instant cause, although the insurer did not agree to pay "all sums," it did agree to pay "up to our limit of liability." The policy defines "limit of liability" as the total liability "for all damages resulting from any one *occurrence.*" We therefore interpret the policy to provide that once coverage was triggered by an accidental bodily injury, Trinity became obligated to pay all sums for which Gage was held liable. Trinity's fourth point of error is overruled.

### CONCLUSION

Having overruled all of Trinity's points of error, we affirm the judgment of the trial court.