The AETNA CASUALTY AND
SURETY CO., Plaintiff,

v.

METROPOLITAN BAPTIST CHURCH,
Joel H. Hoffman, and Deborah M.
Hoffman, Defendants,

v.

FRONTIER INSURANCE CO. OF
NEW YORK, Defendant.

Civil Action No. H–96–0959.

United States District Court,
S.D. Texas,
Houston Division.

Dec. 16, 1996.

Nicholas E. Zito, Livingston & Markle, Houston, Texas, for Plaintiff.

Wayne Adams, Lorance & Thompson, Houston, Texas, for Defendant.

## MEMORANDUM AND ORDER

HOYT, District Judge.

Pending before the Court is the complaint filed by the plaintiff, Aetna Casualty add Surety Co. ("Aetna"), seeking a declaratory judgment that it has no duty to defend or indemnify its insured, Metropolitan Baptist Church ("Metropolitan"), in an underlying lawsuit pending in state district Court. Metropolitan filed a counter complaint against Aetna seeking a declaratory judgment that Aetna has a duty to defend and indemnify it in the underlying action. Metropolitan also filed a third party complaint against Frontier Insurance Company of New York ("Frontier") seeking a declaratory judgment that it has a duty to defend and indemnify Metropolitan in the underlying lawsuit, either alone or in conjunction with Aetna. Frontier filed a motion to dismiss Metropolitan's complaint. After considering the pleadings, motions, and the attached exhibits, the Court is of the opinion that a judgment should be entered declaring that Aetna has a duty to defend Metropolitan in the underlying state suit, and that the complaint against Frontier should be dismissed.

## I. Statement of Facts and Procedural History

Joel and Deborah Hoffman filed a complaint in state court against Metropolitan, Mr. Hoffman's former employer, alleging that Metropolitan negligently misrepresented the terms and benefits of the insurance coverage Mr. Hoffman would receive if he came to work for Metropolitan. Mr. Hoffman left his employment at the Olde Oaks Racquet Club to work as a manager and tennis instructor at the Metropolitan Club, an athletic facility owned by Metropolitan. The Hoffmans' complaint alleges that Metropolitan's principals and agents negligently misrepresented that his medical benefits would be identical to those provided by Olde Oaks.

Mr. Hoffman alleges that he was later terminated from his position at Metropolitan because of a dispute as to his required attendance at the Metropolitan Baptist Church. He informed Metropolitan that he intended to continue his medical coverage through the Consolidated Omnibus Reconciliation Act (COBRA) provisions of the policy because his wife was pregnant at the time. Metropolitan agreed to pay his premiums for another month, through May 31, 1991. In the meantime, Mrs. Hoffman was hospitalized for complications relating to her pregnancy and for kidney stones. On June 18, 1991, Mr. Hoffman attempted to pay Metropolitan for continued coverage under COBRA for eighteen months. The Hoffmans allege that, on June 19, 1991, Metropolitan informed Mr. Hoffman for the first time that his coverage was not identical to his coverage at Olde Oaks, and that the COBRA provisions did not apply to a nonprofit entity such as the Metropolitan Club, which was owned and operated by a church.

Mr. Hoffman acquired an individual insurance policy to cover his wife's hospitalization, but the insurer rejected her insurance claims as pre-existing conditions. The Hoffnans complaint alleges that Mrs. Hoffman became physically and emotionally ill because of the stress and uncertainty regarding the payment of her medical bills and whether she could continue to receive treatment for her medical conditions. Mrs. Hoffman allegedly suffered mental anguish and accompanying physical manifestations, which included repeated hospitalization for premature labor and related urinary and kidney conditions, loss of sleep, clinical anxiety, and depression. Mr. Hoffman claims to have suffered mental anguish as well due to his wife's condition and that of his unborn child, resulting in the loss of sleep, weight loss, and clinical anxiety.

Metropolitan notified Aetna of the Hoffmans' suit against it, and requested that

**220**

Aetna provide a defense. Aetna refused, and filed this suit in federal court seeking a declaratory judgment that it has no duty to defend or indemnify Metropolitan. The parties agree that the action is properly before the Court on the basis of federal diversity jurisdiction.

During Mr. Hoffman's tenure at Metropolitan, the club was insured by two different insurance carriers. From June 14, 1990 to June 14, 1991, Frontier provided coverage. Metropolitan switched its coverage to Aetna in June of 1991. The Hoffmans' original complaint stated only that Metropolitan informed Mr. Hoffman it had no COBRA coverage "[i]n June, 1991." As a result of the confusion, Metropolitan stated that it joined Frontier in this suit, seeking a defense by either one or both of the insurance companies. The Hoffmans later amended their complaint to specify that the event occurred on June 19, 1991.

Frontier seeks dismissal from the suit. The Court's reasons for granting its motion to dismiss are discussed *infra*. Aetna, on the other hand, contends that it has no duty to defend or indemnify Metropolitan because (1) mental anguish is not "bodily injury" under the policy; (2) the umbrella policy has an exclusion for " 'bodily injury' consisting of humiliation, mental injury or mental anguish directly or indirectly related to the employment of any person or persons by any insured"; (3) the policy excludes bodily injury for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement; and (4) no "occurrence" took place during the policy period. The Court will address each of these arguments in turn.

## II. Discussion and Authorities

### A. Frontier's Motion to Dismiss

■ Frontier's policy provides coverage for bodily injury or property damage that "occurs during the policy period." Assuming that bodily injuries occurred, they occurred after Frontier's policy expired, and upon the Hoffnans' discovery, on June 19, 1991, that they did not have the health benefits that had been represented to them. The Hoff-

mans allege that this discovery caused them to suffer severe emotional distress and resulting physical injuries. The undisputed facts show that the alleged injuries were not realized during the policy period.

Because Frontier's policy does not cover injuries occurring outside of the policy period, it has no duty to defend or indemnify Metropolitan and is entitled to a dismissal of Metropolitan's claims against it.

### B. Aetna's Policy Coverage

Next, the Court is required to determine whether the Aetna policy covers bodily injury that occurs during the policy period as a result of a negligent misrepresentation. The policy applies to "bodily injury" or "property damage" "(a) [o]ccurring during the policy period; and (b) [c]aused by an 'occurrence.' " The Court must resolve whether "bodily injury" in fact occurred, whether it occurred during the policy period, and whether it was caused by an "occurrence." Aetna's duty to defend turns on the potentiality that coverage exists as opposed to whether coverage, from a liability perspective, exists.

### C. The Duty to Defend

■ In determining the duty of an insurance company to defend its insured in a lawsuit, Texas courts generally look only to the allegations in the complaint and the terms of the insurance contract. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir.1995); *see also Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973); *State Farm Fire & Cas. Co. v. Wade*, 827 S.W.2d 448, 451 (Tex.App.—Corpus Christi 1992, writ denied). Under the "eight comers" rule or "complaint allegation" rule, the court takes the allegations in the underlying complaint as true, and the duty to defend arises if the complaint asserts a claim that is facially within the terms of the policy's coverage. *Lafarge*, 61 F.3d at 393 (citing *Gulf Chemical Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir.1993)). "The duty to defend arises if the factual allegations against the insured, when fairly and reasonably construed, state a cause of action potentially covered by the policy." *Cullen/Frost Bank*

*v. Commonwealth Lloyd's Ins. Co.*, 852 S.W.2d 252, 255 (Tex.App.—Dallas 1993, writ denied) (citing *Norvell Wilder Supply Co. v. Employers Cas. Co.*, 640 S.W.2d 338, 339, 340 (Tex.App.—Beaumont 1982, writ dism'd)). The duty to defend does not depend on what the facts are, but on what they are alleged to be. *Argonaut*, 500 S.W.2d at 636.

### D. "Bodily Injury"

 The Hoffmans' complaint alleges that they suffered mental anguish accompanied by physical manifestations, including pregnancy complications, kidney problems, loss of sleep, clinical anxiety, and depression. Aetna claims that mental anguish is not "bodily injury" covered by the policy. However, Aetna's policy expressly covers "mental anguish." The umbrella policy defines "bodily injury" as "bodily injury, shock, fright, mental injury, disability, mental anguish, humiliation, sickness or disease sustained by a person, including death resulting from any of these at any time."

 This Court need not enter the debate over whether "pure" mental anguish unaccompanied by physical manifestations constitutes "bodily injury." *Compare Travelers Indem. Co. v. Holloway*, 17 F.3d 113, 115 (5th Cir.1994) (holding, based on insurance policy and facts alleged, that pure mental anguish does not constitute bodily injury under homeowners policy) with *Trinity Universal Ins. Co. v. Cowan*, 906 S.W.2d 124, 130 (Tex.App.—Austin 1995, writ granted) (holding that "an allegation of mental anguish or emotional distress is sufficient to support evidence and damages for the accompanying physical manifestations"). Aetna's policy clearly covers "mental anguish" as a form of bodily injury. In addition, the complaint alleges that physical injuries accompanied the emotional injuries. As long as the complaint alleges facts constituting at least one cause of action covered by the policy, the insurance company has a duty to defend the entire case. *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir.1996) (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983)).

 Aetna also contends that its umbrella policy has an exclusion for bodily injury "consisting of humiliation, mental injury or mental anguish directly or indirectly related to the employment of any person or persons by any insured." The mental anguish alleged in the complaint relates to the absence of health insurance coverage, not a term or condition of employment. Although one could argue that this is indirectly related to Mr. Hoffman's employment, this argument overlooks the fact that the health insurance was a pre-employment condition, not a post-employment condition.

 Under Texas law, any ambiguities in an insurance policy are to be construed strictly against the insurer. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700–01 (5th Cir.1996) (citing *Kelly Assoc., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex.1984)). Moreover, if the complaint alleges even one covered cause of action against the insured, the insurer has a duty to defend the entire case. *Travelers Ins. Co.*, 92 F.3d at 338 (citing *Rhodes v. Chicago Ins. Co.*, 719 F.2d 116, 119 (5th Cir.1983)). The Hoffmans allege that they suffered bodily injury in addition to mental anguish. The exclusion for mental anguish relating to the "employment" of Mr. Hoffman, even if applicable here, cannot defeat Aetna's duty to defend regarding the other physical injuries alleged.

 Aetna's argument that the policy excludes bodily injury "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement" must also fail. The bodily injury alleged by the Hoffmans, if proved, would impose liability because of a negligent misrepresentation by the insured, not because of the assumption of liability in a contract or agreement. The misrepresentation was an oral statement that would not rise to the level of a contract of employment. No party has alleged that a contract of employment existed. Indeed, "negligent misrepresentation is a cause of action recognized in lieu of a breach of contract claim, not usually available where a contract was actually in force between the parties." *Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d

289, 295 (Tex.App.—El Paso 1992, writ denied).

In addition, the policy itself states that "[t]his exclusion does not apply to liability for damages ... (2)[t]hat the insured would have in the absence of the contract or agreement." This is the case with the Hoffmans' cause of action for negligent misrepresentation, which exists in the absence of any contract.

The Court concludes that "bodily injury" occurred, as defined by Aetna's policy. We must next consider whether these injuries occurred during the policy period.

### E. Did the Injuries Occur During the Policy Period?

Taking the Hoffmans' allegations as true, these physical and emotional injuries began on June 19, 1991, when the Hoffmans learned that they could not obtain COBRA coverage. Aetna's policy with Metropolitan ran from June 15, 1991 to June 15, 1992. The injuries therefore occurred during the policy period.

### F. Was There an "Occurrence"?

Aetna's policy requires that the bodily injuries be "[c]aused by an 'occurrence'" for coverage to apply. Aetna asserts that no occurrence took place. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same harmful conditions." The term "accident" is not defined.

■ Texas courts interpret language in insurance policies according to its "usual or popular meaning unless it is ambiguous or it is shown that the parties intended it to have a special meaning." *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). An "accident" is an "unforeseen and unexpected consequences of otherwise intentional acts." *Trinity Universal Ins. Co. v. Cowan*, 906 S.W.2d 124, 129 (Tex.App.—Austin 1995, writ granted); *see also Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex.1976); *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 503 (Tex.Civ.App.—Texarkana 1979, no writ);

*Maryland Cas. Co. v. Mitchell*, 322 F.2d 37, 40 (5th Cir.1963). Thus, "if the insured did not know or anticipate that his intentional act would produce the injury, then as to the insured the injury produced was unexpected, unforeseen, and, therefore, accidental." *Cowan*, 906 S.W.2d at 129 (citations omitted). The question is whether the injuries alleged by the Hoffmans were caused by an occurrence/accident.

The Hoffmans' complaint alleges that the injuries resulted from Metropolitan's negligent misrepresentation, at the time of Mr. Hoffman's hiring, that he would retain the same health benefits that he had in his previous job.

■ Before considering whether a negligent representation may constitute an "accident," covered under the policy, we must consider whether the policy requires the occurrence to take place at any particular time. Mr. Hoffman's hiring and the negligent misrepresentation occurred sometime prior to June 15, 1991, when Aetna's coverage took effect. The plain language of the policy does not require that the occurrence take place *during* the policy period. It does require that the *bodily injury* "occur during the policy period." No such time restriction is associated with the term "occurrence." The policy states only that the bodily injury "must be caused by an 'occurrence,'" and that the "'occurrence' must take place in the 'coverage territory.'"[1] Without doubt, manifestations of the injuries occurred during the policy period.

■ Limitations in an insurance policy are strictly construed against the insurer. *Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 701 (5th Cir.1996) (citing *Kelly Assoc., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984)). In the absence of any reasonable construction to the contrary, the Court will construe the language of the policy as it is written, and will not infer any additional, unwritten limitation on the term "occurrence." To the extent that there is any

---

1. "Coverage territory" is defined simply as the United States and certain designated international locations.

arguable ambiguity in the policy, the Court will construe it against the insurer. The Court concludes that while the bodily injury must occur during Aetna's policy period, the "occurrence" that caused the injury need not.

■ We now consider whether a negligent misrepresentation is an "occurrence" or "accident" under Texas law. Texas courts have held that *intentional* misrepresentations are not an occurrence or accident precisely because they are made intentionally and with the intent to defraud, and thus, are not accidental. See *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex.App.—Houston [1st Dist.] 1990, writ denied). However, whether a *negligent* misrepresentation is an occurrence has not been addressed.

In the absence of any state court precedent, this Court must predict how the highest court of the state would rule if presented with the same issue. *Commissioner of Internal Revenue v. Bosch's Estate*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782–83, 18 L.Ed.2d 886 (1967); *Transcontinental Gas Pipe Line Corp. v. Transportation Ins. Co.*, 953 F.2d 985, 988 (5th Cir.1992). Based on Texas case law defining other negligent conduct as "accidental," and thus, an occurrence, as well as a comparison with other states with similar interpretations of "negligent misrepresentation," this Court determines that a negligent misrepresentation would be considered an occurrence under Texas law.

■ A negligent misrepresentation is an intentional act with unintended consequences. Without considering the merits of the pending state court case, the elements of the tort are: (1) a representation is made by a defendant in the course of his business or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991) (citing *Restatement (Second) of Torts* § 552 (1977)). The tort involves an intentional statement that

was made negligently, or without reasonable care, and that later proves to be false.

■ Negligent conduct may be an "accident" under Texas law if the resulting injury was unexpected or unintended. *Travelers Ins. Co. v. Volentine*, 578 S.W.2d 501, 502–03 (Tex.Civ.App.—Texarkana 1979, no writ); *Trinity Universal Ins. Co. v. Cowan*, 906 S.W.2d 124, 128–29 (Tex.App.—Austin, writ granted); *see also* 7 A.L.R.3d § 5 (1966). The Texas Supreme Court has held that an injury may be unintended, and thus an accident, although the acts causing the injury were intentional. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 377 (Tex.1993). The court observed that when

> the effect is not the natural and probable consequence of the means which produce it—an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of the means, or an effect which the actor did not intend to produce, and which he cannot be charged with a design of producing—it is produced by accidental means.

*Id.* (quoting *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 555–56 (Tex. 1976)).

The court in *S.S.* was construing an intentional injury exclusion in an insurance contract, but observed that the same reasoning applies in construing an "accident" under a policy. *Id.*

A negligent misrepresentation causes an injury that is unexpected, from the viewpoint of its maker. Because of the maker's negligence in obtaining or communicating the information, the party relying on the representation is injured. The statement has an "effect which the actor did not intend to produce, and which he cannot be charged with a design of producing." *S.S.*, 858 S.W.2d at 377. Negligent misrepresentation does not rise to the level of intentional misrepresentation under Texas law because scienter, or intent to deceive, is not an element. *Rosenthal v. Blum*, 529 S.W.2d 102, 105 (Tex.Civ. App.—Waco 1975, writ ref'd n.r.e.). Therefore, this Court concludes that a negligent misrepresentation falls within the purview of

the term "accident" as defined by Texas courts.

It is instructive to compare Texas law on negligent misrepresentation with that of other states. Other state courts have found that a negligent misrepresentation is an "occurrence" or "accident" covered by insurance policies. In *Sheets v. Brethren Mut. Ins. Co.*, 342 Md. 634, 679 A.2d 540, 551–52 (1996), Maryland's highest court held that a negligent misrepresentation, like other forms of negligence, is accidental if the resulting damage is unforeseeable. An Ohio court, similarly, held that because a negligent misrepresentation was unintentional, it was, thus, accidental. *State Farm Fire & Cas. Co. v. Helminiak*, 74 Ohio Misc.2d 91, 659 N.E.2d 385, 389 (C.P.1995).

The Supreme Court of New Jersey observed that insurers generally must defend an insured accused of reckless, negligent, or innocent misrepresentations, but are not required to defend when the insured is accused of intentional misrepresentations. *SL Industries, Inc. v. American Motorists Ins. Co.*, 128 N.J. 188, 607 A.2d 1266, 1276–77 (1992). This distinction arises because "[a]n allegation of negligence presumes the absence of an intent to injure." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 607 A.2d 1255, 1264 (1992); *see also Universal Underwriters Ins. Co. v. Youngblood*, 549 So.2d 76, 78 (Ala.1989) (holding that negligence claims and innocent or reckless aspects of the misrepresentation claims presented a sufficient basis to support the declaration of a duty to defend).

Of course, at least one other jurisdiction has held that a negligent misrepresentation is not an accident or occurrence. Most notably, California courts have held that because negligent misrepresentation under California law is associated more with fraud than with ordinary negligence, it cannot be an accidental, unintended occurrence. *See American States Ins. Co. v. Canyon Creek*, 786 F.Supp. 821, 825 (N.D.Cal.1991) (citing *Blankenheim v. E.F. Hutton & Co.*, 217 Cal.App.3d 1463, 266 Cal.Rptr. 593, 599 (1990)). This is not the case with Texas, however, where the tort is based on negligence.

Therefore, this Court finds that a negligent misrepresentation is an "occurrence" under Texas law. Thus, Aetna has a duty to defend Metropolitan under its policy because bodily injury allegedly occurred during the policy period, and the injury, if any, was caused by an occurrence.

### G. The Hoffmans

█ Aetna joined the Hoffmans as defendants, along with Metropolitan, in this lawsuit. The Hoffmans have not filed a response. It appears that they were never served with process in this suit. Regardless, the Court is of the opinion that the Hoffmans are not necessary parties to this suit when considering the duty of the insurance company to defend its insured (Metropolitan). The Hoffmans have no role other than as the plaintiffs in the underlying suit in state court. Therefore, the Court *sua sponte* dismisses the suit against the Hoffmans.

### H. The Duty to Indemnify

█ Aetna also seeks a declaration that it has no duty to indemnify Metropolitan in the underlying state suit. This issue is not yet ripe for determination, however. It is well-settled that a trial court "is without authority to decide an insurer's duty to indemnify in the absence of a final judgment in the underlying tort action." *Nationwide Property & Cas. Ins. Co. v. McFarland*, 887 S.W.2d 487, 491 (Tex.App.—Dallas 1994, writ denied) (citing *Central Sur. & Ins., Corp. v. Anderson*, 445 S.W.2d 514, 515 (Tex.1969); *Firemen's Ins. Co. v. Burch*, 442 S.W.2d 331, 333–34 (Tex.1968)). Therefore, the Court makes no finding as to Aetna's duty to indemnify, as such a finding should await the outcome of the underlying state lawsuit.

### III. Conclusion

For above-mentioned reasons, the Court enters a declaratory judgment that Aetna has a duty to defend Metropolitan in the underlying suit against it in state court, and dismisses Metropolitan's third party suit against Frontier.