United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 21, 2005**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*
*For the Fifth Circuit*

No. 04-41473

FEDERAL INSURANCE CO.

Plaintiff-Appellant,

v.

ACE PROPERTY & CASUALTY CO.

Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before JOLLY, DENNIS, and OWEN, Circuit Judges.

OWEN, Circuit Judge:

In this coverage dispute between two insurance companies, Federal Insurance Company appeals the district court's summary judgment in favor of Ace Property and Casualty Company. The issue is whether Ace had a duty to defend or to indemnify its insured, Electronic Data Systems Corporation ("EDS"), in a lawsuit for damages arising from negligent misrepresentations allegedly made by EDS. Because there was no "occurrence" within the meaning of Ace's policies, we affirm.

# I

EDS, a global technology services company that regularly provided computer and electronic services for the North Atlantic Treaty Organization (NATO), commenced doing business with someone who identified himself as "Colonel West." West told EDS that he was in charge of a covert NATO procurement project that would involve the purchase of sophisticated electronic equipment with expenditures of eighty to one hundred billion dollars, and West engaged EDS to become general contractor of that endeavor. EDS in turn invited Akai Musical Instrument Corporation and Pioneer New Media Technologies, Inc. to bid on the project. EDS represented to Akai and Pioneer that the bidding process required them to ship sample products to NATO representatives, who would have the right to destroy the products as part of their testing procedures. Relying on EDS's representations and hoping that they would be chosen as providers and consequently reap substantial profits, perhaps billions of dollars, from the NATO project, Akai and Pioneer signed Test to Destruction Authorization Agreements and shipped property worth millions of dollars, supposedly to NATO representatives.

After shipments had occurred over the course of three years, EDS, Akai, and Pioneer learned that the NATO operation was a fraud perpetrated by "Colonel West" who was neither a military officer nor affiliated with NATO. The equipment shipped by Akai and Pioneer was not received or used by NATO personnel, but was used or sold by West for commercial purposes or his private gain. Subsequently, Akai sued EDS for, *inter alia*, negligent misrepresentations regarding the fraudulent scheme. Pioneer intervened.

Ace, as a successor insurer, insured EDS under two commercial general liability policies, which together spanned the time that products had been shipped by Akai and Pioneer. EDS called

on Ace to provide a defense to the claims asserted against it by Akai and Pioneer. Ace refused, claiming that the alleged negligent misrepresentations were not "occurrences" under the commercial general liability policies. EDS eventually settled the suit, and its excess professional liability insurance carrier, Federal, paid the defense and indemnity costs in excess of EDS's deductible.

Asserting subrogation rights, Federal brought this suit against Ace seeking declaratory relief and damages of more than five million dollars because of Ace's refusal to defend or cover the claims against EDS. The parties filed cross-motions for summary judgment. The district court ruled in Ace's favor, concluding that property loss resulting from EDS's alleged negligent misrepresentations did not constitute an "accident" and therefore was not an "occurrence" under the policies. Federal pursued this appeal.

## II

We review a grant of summary judgment *de novo*, applying the same legal standards as the district court.[1] "Summary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law."[2] The material facts are undisputed. The only questions before us concern the proper construction of the Ace policies, which the parties agree is determined under Texas law.[3] Because our resolution of whether there was an "occurrence" is dispositive of both the duty to defend and the duty to indemnify, we do not reach the issue of whether the losses suffered by Akai and Pioneer were "property damage" within the meaning of the Ace policies.

The commercial general liability policies at issue provide that the insurer "will pay those sums

---

[1]*Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

[2]*Pluet v. Frasier*, 355 F.3d 381, 383 (5th Cir. 2004); FED. R. CIV. P. 56(c).

[3]*See Guaranty Nat'l Ins. Co. v. Azrock Indus. Inc.*, 211 F.3d 239, 243 (5th Cir. 2000).

that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." "[P]roperty damage" caused by an "occurrence" during the policy period is covered. "Property damage" is defined as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." An "[o]ccurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The term "accident" is not otherwise defined in the policies.

Federal contends that a negligent misrepresentation constitutes an "occurrence," citing a federal district court's opinion, *Aetna Casualty & Surety Co. v. Metropolitan Baptist Church*.[4] In *Metropolitan*, a company negligently misrepresented to an applicant for employment that its health insurance policy would provide the same benefits as his existing employer's policy. The applicant relied on the misrepresentations in accepting a position. The district court held that the employer's negligent misrepresentations were an "occurrence."[5] That court concluded that Texas courts had not addressed whether a negligent misrepresentation could be an occurrence, but it considered decisions of the Supreme Court of Texas that had decided whether other events did or did not constitute an "accident" and therefore were or were not an "occurrence."[6]

We need not resolve today whether *Metropolitan* was correctly decided or whether, under Texas law, negligent misrepresentations can ever constitute an "occurrence" because, under the facts of the case before us, none of EDS's conduct nor any of its alleged omissions was an "accident" within the meaning of the policy. Perhaps the most analogous Texas case is *Argonaut Southwest*

---

[4]967 F. Supp. 217 (S.D. Tex. 1996).

[5]*Id.* at 224.

[6]*Id.* at 223–24.

*Insurance Co. v. Maupin.*[7] There, Maupin contracted to remove "borrow material" from a tract of land for use in a highway construction project. After removing considerable material from the land, Maupin learned that the person with whom he had contracted was not the owner but instead was merely a tenant. The true owners of the property that Maupin had damaged by excavations subsequently sued him, and his insurance carrier refused to defend the suit or indemnify him for the judgment rendered against him. The Supreme Court of Texas held that the removal of material from the property was intentional and deliberate even though Maupin had no intent to injure the true owners.[8] Nor did the mistake in dealing with someone other than the true owners render the action an accident.[9] "The fact that they [sic] did not deal originally with the owners of the property was the mistake or error. There was no insurance against liability for damages caused by mistake or error."[10] The Texas court reasoned, "The fact that they [sic] were unaware of the true owner of the property has no bearing upon whether the trespass was caused by accident. The respondent's acts were voluntary and intentional, even though the result or injury may have been unexpected, unforeseen and unintended."[11] The court therefore held that "there was no coverage under the policy for damages caused by mistake or error as to the ownership of the property in question. The damage was not an accident or occurrence within the meaning of this policy."[12] Although the duty to defend and the duty to indemnify are separate duties,[13] the Supreme Court of Texas also concluded that there was no duty

[7]500 S.W.2d 633 (Tex. 1973).

[8]*Id*. at 635.

[9]*Id.*

[10]*Id.*

[11]*Id.*

[12]*Id.*

[13]*King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002).

to defend since all that was alleged by the owners of the property against Maupin was trespass, which was an intentional tort.[14] The duty to defend in Texas is determined solely by an examination of the pleadings and the insurance policy, which is known as the "eight corners" rule.[15]

Other decisions of the Supreme Court of Texas also lead us to conclude that there was no accident under the facts presented here. Whether there has been an accident, and thus an occurrence, is judged from the viewpoint of the insured under the provisions of this commercial general liability policy.[16] EDS fully intended and expected that the property shipped by Akai and Pioneer would never be returned to them. The fact that EDS was mistaken about the true use to which the property would be put and was unaware of the scam being perpetrated upon it when it made representations to Akai and Pioneer does not render EDS's conduct an accident.

Federal asserts that EDS's negligent misrepresentations caused Akai and Pioneer to sign the Test to Destruction Authorization Agreements and that those agreements led to the loss of Akai's and Pioneer's property. But here again, although EDS may have innocently induced Akai and Pioneer to sign the agreements, EDS intended that they relinquish their property without recourse. The losses Akai and Pioneer suffered were not the result of an "accident".

The Texas Supreme Court's decision in *Mid-Century Insurance Co. of Texas v. Lindsey* is also instructive.[17] A child climbed into the bed of his father's locked pickup truck and entered

---

[14]*Maupin*, 500 S.W.2d at 636.

[15]*King*, 85 S.W.3d at 187.

[16]*Id*. at 191–92 (holding that under a policy with virtually identical provisions, whether there was an accident is determined from the viewpoint of the insured); *Mid-Century Ins. Co. of Tex. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999) ("[W]e have held that an injury is accidental if 'from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury.'" (quoting *Republic Nat'l Life Ins. Co. v. Heyward*, 536 S.W.2d 549, 557 (Tex. 1976))).

[17]997 S.W.2d 153 (Tex. 1999).

through the sliding rear window. He brushed against a loaded shotgun resting in a gunrack mounted over the window, the gun discharged, and a person sitting in a car parked next to the pickup was injured. The Texas court held that this was an accident because although the child intended to enter the pickup, the child, an insured, could not reasonably have anticipated the injury:

> [A]n injury is accidental if from the viewpoint of the insured, it is not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured [sic], or would not ordinarily follow from the action or occurrence which caused the injury. An injury caused by voluntary and intentional conduct is not an accident just because the result or injury may have been unexpected, unforeseen and unintended. On the other hand, the mere fact that an actor intended to engage in the conduct that gave rise to the injury does not mean that the injury was not accidental. Rather, both the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental. An effect that cannot be reasonably anticipated from the use of the means that produced it, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, is produced by accidental means.[18]

The boy "did not intend to cause the shotgun to discharge or [the person] to be injured, nor was it reasonably foreseeable that either consequence would result from the boy's trying to enter the pickup through the rear window."[19] In the present case, however, EDS did intend for Akai and Pioneer to permanently part with their property and that the property might even be destroyed. The loss of Akai's and Pioneer's property "ordinarily follow[ed]" from EDS's misrepresentations and the Test to Destruction Authorization Agreements.

With respect to the duty to defend, Akai and Pioneer alleged that EDS (1) voluntarily made statements regarding the NATO project, (2) failed to exercise reasonable care in researching and

---

[18]*Id.* at 155 (internal citations omitted); *see also Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827–28 (Tex. 1997) (holding that a photo lab clerk's intentional acts of replicating photographs of a woman and showing them to friends was not an "accident" although he never intended for the woman to know what he had done).

[19]*Mid-Century Ins. Co.*, 997 S.W.2d at 155.

validating the legitimacy of the NATO project, and (3) required Akai and Pioneer to execute Test to Destruction Authorization Agreements, under which Akai and Pioneer would provide sample products to be tested and destroyed by NATO. According to the pleadings, EDS may not have known that the NATO project was a hoax, but EDS did expect that Akai's and Pioneer's products would never be returned. Because EDS intended Akai and Pioneer to ship sample products to NATO representatives, expecting that the products would never be returned, the loss of those products was the natural and probable consequence of EDS's representations. The allegation that EDS was negligent in failing to research or validate the legitimacy of the NATO project does not alter the analysis. The Texas Supreme Court has held that "'[i]n reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged.'"[20] The cause of the alleged property damage was EDS's intent and its plan that Akai and Pioneer would permanently part with their property. The losses were an effect EDS did "intend to produce" and that EDS could "be charged with the design of producing." Therefore, they were not caused by an "accident."

Ace had no duty to defend or indemnify EDS, and the district court's grant of summary judgment in favor of Ace is AFFIRMED.

---

[20]*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (quoting the lower court's opinion, *Merchants Fast Motor Lines, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 919 S.W.2d 903, 905 (Tex. App.—Eastland 1996), which was reversed on appeal); *see also Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997).