STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Plaintiff,

v.

Alfredo Jose MARTINEZ–LOZANO; Myrna Martinez; Gerawan Ranches, a California General Partnership; Gerawan Farming, Inc., formerly known as Gerawan Company, Inc., a California Corporation; Ray M. Gerawan; Star R. Gerawan; Mike Gerawan; and Dan Gerawan, Defendants.

No. CV–F–94–5823.

United States District Court, E.D. California.

Feb. 8, 1996.

Thomas Elmer Campagne, Thomas E. Campagne Law Firm, Fresno, CA, for defendants.

Philip David Kopp, Dowling Magarian Aaron and Heyman, Fresno, CA, for plaintiff.

### MEMORANDUM OPINION AND ORDER RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

WANGER, District Judge.

## I. Introduction

Plaintiff State Farm Mutual Automobile Insurance Company ("State Farm") moves for summary judgment establishing that it has no duty to defend Alfredo Jose Martinez–Lozano ("Martinez") and Gerawan Ranches, Gerawan Farm, Ray Gerawan, Star Gerawan, Mike Gerawan and Dan Gerawan ("Gerawan") in the claims against Defendants in *Leal, et al. v. Gerawan Ranches, et al.*, CV–F–93–5804 and *Martinez v. Gerawan Ranches, et al.*, CV–F–94–6098 ("the Underlying Actions"). State Farm claims that it has no duty to defend because no potential for coverage exists under the policy. Defendants Gerawan oppose the motion.

## II. Background

Plaintiffs are insurers of Defendant Martinez in the Underlying Actions. Martinez is employed as a crew leader by one of the Gerawan Defendants. On July 23, 1993 Martinez was transporting his wife and eight other farm workers to work in a truck insured by State Farm when the truck was hit by an uninsured vehicle that ran a stop sign. The truck was not equipped with seats or safety restraints; as a result, the farm workers were injured. All eight farm workers filed damage actions for bodily injuries against Mr. Martinez and the Gerawan Defendants in *Leal et al v. Gerawan Ranches, et al.* Mrs. Martinez filed a separate suit for damages against the Gerawan Defendants in *Martinez v. Gerawan Ranches, et al.* The two actions were consolidated for all purposes by Stipulation and Order filed January 31, 1995.

The underlying actions assert claims under the Migrant and Seasonal Agricultural Workers Protection Act (29 U.S.C. §§ 1801, et seq. "MSAWPA"), as well as on a loss of consortium claim.[1] Plaintiff is providing a defense to the Defendants in the Underlying Actions under a reservation of rights.

State Farm contends there is no potential for coverage under the applicable policy for a MSAWPA violation which requires proof of an intentional violation and that plaintiffs are

---

1. Plaintiffs below filed an amended complaint on January 11, 1996 which alleged three additional claims: Violation of California Farm Labor Contractors' Act (California Labor Code § 1695.7); Violation of California Farm Labor Contractors' Act (California Labor Code § 1682 et seq.) and Negligence Per Se.

employees; both elements are said to be excluded under the policy.

The Gerawan Defendants oppose the motion. Martinez did not file a notice of opposition or non-opposition.

### III. Jurisdiction

The court has original jurisdiction over this action under 28 U.S.C. § 1332. The action is a civil one between citizens of differing states, and the matter in controversy exceeds $50,000.00.

### IV. Summary Judgment

■ Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists when the non-moving party produces evidence on which a reasonable trier of fact could find in its favor viewing the record as a whole in light of the evidentiary burden the law places on that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 252–56, 106 S.Ct. 2505, 2512–14, 91 L.Ed.2d 202 (1986). The non-moving party cannot simply rest on its allegation without any significant probative evidence tending to support the complaint. *Id.* at 249, 106 S.Ct. at 2510–11.

■ The more implausible the claim or defense asserted by the opposing party, the more persuasive its evidence must be to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nevertheless, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513. Even where the basic facts are undisputed, if reasonable minds could differ as to the inferences to be drawn from those facts, summary judgment should be denied. *Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir. 1992).

### V. Choice of Law

■ Under the mandate of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), a district court sitting in diversity jurisdiction must interpret and apply the substantive law of the forum state. The district court must apply the same choice of law analysis that would be applied by state courts in the jurisdiction in which the district court is situated. *Liew v. Official Receiver & Liquidator,* 685 F.2d 1192, 1195 (9th Cir.1982) *citing Klaxon Co. v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The court applies the choice of law rules of the state of California.

■ California choice of law rules are founded upon a "governmental interest analysis." *Offshore Rental Co. v. Continental Oil Co.,* 22 Cal.3d 157, 161–165, 148 Cal.Rptr. 867, 583 P.2d 721 (1978). Under the governmental interest analysis, it must first be determined if the laws of the two jurisdictions differ. In this case, the two jurisdictions are Texas, where the insurance policy was issued, and California, where the cause of action arose, and the insured resides.

If the laws of the two jurisdictions differ, it must be determined if both jurisdictions have an interest in having their law applied to the action at hand. If only one jurisdiction has such an interest, there is no true conflict and the court applies the law of that jurisdiction. *Liew v. Official Receiver and Liquidator,* 685 F.2d at 1196. However, if the two competing states' laws differ and both states have an interest in having their law applied, then the court must apply the "comparative impairment approach" to determine which jurisdiction's interest would be more impaired if its policy were subordinated to the policy of the other state. *Clemco Industries v. Commercial Union Ins. Co.,* 665 F.Supp. 816, 818 (N.D.Cal.1987) *citing Liew,* 685 F.2d at 1196, n. 6.

■ In making the required analysis, the "relevant contacts" identified by the Restatement (Second) of Conflicts of Laws are considered. They are: 1) the place of contracting; 2) the place of negotiating; 3) the place of performance; 4) the location of the subject matter of the contract; and 5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Robert*

*McMullan & Son, Inc. v. United States Fidelity and Guaranty Co.,* 103 Cal.App.3d 198, 204–205, 162 Cal.Rptr. 720 (1980).

## A. California And Texas Laws on Interpreting Insurance Policies

The fact that two states are involved does not in itself indicate that there is a conflict of laws problem. There is obviously no problem where the laws of the two states are identical. *Hurtado v. Superior Court,* 11 Cal.3d 574, 580, 114 Cal.Rptr. 106, 522 P.2d 666 (1974).

California and Texas laws regarding interpretation of insurance contracts appear to be substantially the same. According to Texas case law, insurance policies are controlled by rules of construction which are applicable to contracts generally. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). In interpreting a policy, the court construes all parts of the document together, giving effect to the intent of the parties. *Travelers Indem. Co. v. Lucas,* 678 S.W.2d 732, 734 (Tex. App.—Texarkana, 1984).

Terms used in an insurance contract, like any other contract, are to be given their plain, ordinary and generally accepted meaning unless the policy itself shows them to have been meant in a technical or different sense. *Underwriters at Lloyds, London v. Harkins,* 427 S.W.2d 659 (Tex.Civ.App.— Houston, 1968.)

California's laws on insurance policy interpretation are similar to those of Texas. Under California's statutory rules of insurance contract interpretation, the written provisions of the insurance policy are to be "interpreted in their ordinary and popular sense," unless "used by the parties in a technical sense or a special meaning is given to them by usage." *California Civil Code § 1644.* "The words used in an insurance policy are to be interpreted according to the meaning which an insured would reasonably expect. Courts will not adopt a strained or absurd interpretation in order to create an ambiguity where none exists." *Reserve Insurance Co. v. Pisciotta,* 30 Cal.3d 800, 807, 180 Cal. Rptr. 628, 640 P.2d 764 (1982).

California and Texas law also share a similar interpretation of the term "intentional" as used in the insurance policy context. According to California law, an intentional act subject to an appropriate policy exclusion is one done with a "preconceived design to inflict injury." *Clemmer v. Hartford Insurance Co.,* 22 Cal.3d 865, 887, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). Under Texas law, to take an event out of coverage based on an "intentional" exclusion an insurer must show an intent to injure or damage. *Trinity Universal Insurance Co., v. Cowan,* 906 S.W.2d 124 (Tex.App.—Austin 1995).

 Plaintiff asserts there is no conflict between Texas law and California law on the specific issues raised by the motion for summary judgment. (Plaintiff's motion, 2:24–26, n. 2.) The two jurisdictions' laws on interpretation of insurance contracts and the terms "intentional" are substantially the same. There is no reason to choose Texas law over California law. The policy will be interpreted under the law of the forum state, California.

## VI. Discussion

The Parties' arguments center on the interpretation of the insurance policy language. State Farm asserts that the driving, which allegedly violated federal safety regulations governing migrant farm workers does not constitute an "auto accident" covered under the policy. More specifically, it contends that both the "intentional" act and "employee" status exclusions of the policy bar plaintiffs' coverage claim for personal injuries resulting from MSAWPA violations.

## A. Intentional Act Exclusion

To prevail on the merits of the underlying MSAWPA action, plaintiffs must prove that the insured Mr. Martinez and the Gerawan Defendants "intentionally" violated the MSAWPA. Section 1854(c)(1) of the Act states in pertinent part: "If the court finds that the respondent has intentionally violated any provision of the Act or any regulation under this Act, it may award damages [to the complaining party] ..."

The MSAWPA was adopted in 1983. The "intentional violation standard" has not been interpreted by the Ninth Circuit. The legislative history of the Act, and interpretation by the Fifth Circuit indicate that the "intentional violation standard" is identical to that of the Fair Labor Contractor Registration Act of 1963 ("FLCRA").[2] Prior to the MSAWPA, Courts uniformly interpreted the term "intentionally" in the FLCRA to mean a "conscious or deliberate" act, that did not require a specific intent to violate the law. *Alvarez v. Longboy,* 697 F.2d 1333, 1338 (9th Cir.1983); *Alvarez v. Joan of Arc, Inc.,* 658 F.2d 1217, 1224 (7th Cir.1981). The Fifth and Eleventh Circuits have referred to it as the "common civil standard" which holds a person liable for the natural consequences of his or her acts. *Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1345 (5th Cir.1985) *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986); *Rivera v. Adams Packing Association, Inc.,* 707 F.2d 1278, 1283 (11th Cir.1983).

The State Farm auto insurance policy issued to Mr. and Mrs. Martinez does not define the term "intentional." The policy contains the following language:

"We do not provide Liability coverage for any person:

1. Who intentionally causes bodily injury or property damage; ..." Part A, Exclusions A.

■■■ If the language of a policy is clear and explicit, it governs the interpretation of the policy. *Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1265, 10 Cal.Rptr.2d 538, 833 P.2d 545 (1992). Applying California law of contract interpretation, construing for the plain meaning, it is not clear from the language above, which meaning of "intentional" applies. For example, a person may intentionally act without intending to cause harm. This ambiguity has caused conflicting constructions. A number of cases recognize

that "an act under the traditional terminology of the law of torts that is denominated 'intentional' or 'wilful' does not necessarily fall outside insurance coverage." *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 273 n. 12, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

■■■ Section 533 of the California Insurance Code provides that "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." This section is part of every insurance contract and is equivalent to an exclusionary clause in the contract itself. *Nuffer v. Insurance Co. of North America,* 236 Cal.App.2d 349, 356, 45 Cal.Rptr. 918 (1965).

In 1978, the California Supreme Court interpreted the term wilful act under Section 533 as the specific intent to injure. *Clemmer v. Hartford Insurance Co.,* 22 Cal.3d 865, 887, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978). In *Clemmer,* the Court endorsed a "clear line of authority" that an intentional or willful act "will not exonerate the insurer from liability under the Insurance Code section unless it is done with a preconceived design to inflict injury." *Id.*[3] In other words, the insured must subjectively intend to harm another in order for his or her conduct to be considered intentional. *Republic Indem. Co. v. Superior Ct. of Los Angeles Cty.,* 224 Cal.App.3d 492, 500, 273 Cal.Rptr. 331 (1990).

This definition of "intentional," with its focus on the preconceived state of mind of the actor to inflict harm, is stricter than that necessary to prove a claim under the federal MSAWPA. Plaintiffs in the underlying case could prevail by proving the necessary intent to violate the Federal Act, without establishing the higher standard of intent which excludes coverage under the State Farm policy.

The California Supreme Court revisited the issue of insurance policy exclusions for

---

2. The MSAWPA repealed FLCRA, 7 U.S.C. § 2041, et seq. The Sixth Circuit has reviewed the legislative history of the Act and notes that the intentional standard is identical to the analogous FLCRA provision, section 2050a(b). *Bueno v. Mattner,* 829 F.2d 1380, 1385 n. 4 (6th Cir. 1987) *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988).

3. This standard is also found in Texas case law on insurance coverage and exclusion for intentional acts. *See Trinity Universal Insurance Co. v. Cowan,* 906 S.W.2d 124.

intentional acts in *J.C. Penney Cas. Ins. Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991). The "intentional act" in *J.C. Penney* was the sexual molestation of a five year-old girl. The court stated that a showing of a "preconceived design to inflict harm" was not required when the harm was inherent in the act itself. *Id.* at 1024, 278 Cal. Rptr. 64, 804 P.2d 689. The wrongful act of intentional child molestation is in itself so harmful as to always be exempt from insurance coverage, without any proof of the insured's subjective intent to harm, as required by *Clemmer.*

Despite its emphasis on the inherently harmful nature of the act, the court did not overrule *Clemmer.* The court stated its holding was narrow: "We cannot emphasize too strongly ... the narrowness of the question before us. The only wrongdoing we address is the sexual molestation of a child. Whether other types of wrongdoing are also excluded from coverage as a matter of law ... is not before us." *J.C. Penney Cas. Ins. Co. v. M.K.,* 52 Cal.3d at 1028, 278 Cal.Rptr. 64, 804 P.2d 689. The Court explicitly left the *Clemmer* holding intact. "We ... reject the request to limit or overrule *Clemmer.*" *Id.,* at 1022, 278 Cal.Rptr. 64, 804 P.2d 689.

California insurance law construes "intentional," for insurance policy exclusion purposes, as a "preconceived design to inflict injury," unless, as in child molestation, the act itself is inherently harmful. The harmfulness of the act must be decided on a case by case basis.

The burden is on the insurer to prove that a claim is within an exclusion. *Clemmer,* 22 Cal.3d at 880, 151 Cal.Rptr. 285, 587 P.2d 1098. Plaintiffs in the underlying action may prove a MSAWPA claim by establishing an intentional act which does not rise to the level of a "preconceived design to inflict injury," or that is not inherently harmful in itself. State Farm fails to meet this burden. The motion for summary judgment on the ground of intentional act exclusion is DENIED.

## B. Employee Status and Course of Employment

Plaintiff State Farm also claims that it has no duty to defend based on the policy exclusion of coverage "for bodily injury to an employee of that person during the course of employment ..." (Paragraph 7 of the Policy.) According to State Farm, in order to prevail in an action under the MSAWPA, the plaintiffs in the underlying action must establish that they were agricultural workers employed by the defendants under sections 1802(8) and 1802(10). If the plaintiffs were "migrant" or "seasonal agricultural workers", State Farm argues, then plaintiffs were also "employees" and thereby excluded from coverage.

Defendants respond that liability under the MSAWPA is not limited to injuries to any employee during the course of employment. Citing 29 U.S.C. § 1802(2), they contend that liability under the Act can flow to one "who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, ... *and* who either recruits, solicits, hires, employs, furnishes or transports any migrant or seasonal agricultural worker." 29 U.S.C. § 2802(2). Defendants claim liability may be imposed on a person using or causing a vehicle to provide transportation.

In its reply papers, Plaintiff agrees that the term "agricultural employer" can include persons other than those who merely "employ" agricultural workers. However, State Farm places emphasis on the status of the plaintiffs (rather than the employer-defendants) in the underlying case, who cannot recover unless they establish that they were seasonal or migrant agricultural workers employed in agricultural employment. *Citing* 29 U.S.C. § 1841(a)(1) and 29 U.S.C. §§ 1802(8)(A) and (10)(A).

In open court, counsel for Plaintiff requested an additional opportunity to brief the issue of whether liability under the Act could be imposed solely for injuries to an employee during the course and scope of employment. The court granted the request. Plaintiff State Farm filed a Supplemental Brief on October 10, 1995 and Gerawan Defendants filed a reply on October 17, 1995.

In its Supplemental Brief, State Farm makes two arguments that there is no potential for coverage under the policy and no duty to defend or indemnify Mr. Martinez or the Gerawan Defendants. One is based on Mr. Martinez *not acting* within the course of employment, and the other is founded upon Mr. Martinez *acting* within the course of his employment.

### 1. Mr. Martinez was not acting within the course of his employment.

State Farm claims that the Gerawan Defendants contend that Mr. Martinez was *not* acting within the course of employment when he transported the Gerawan Defendants' employees to the fields. State Farm argues that if Mr. Martinez was *not* acting within the course of his employment when he transported workers to the fields, then the Gerawan Defendants cannot be legally responsible, and are not "covered persons" as defined by the policy.

State Farm argues that paragraph 9 of its previous Separate Statement of Undisputed Material facts contains a misstatement. It reads:

> 9. Mr. Martinez and the Gerawan Defendants are **"covered persons"** within the meaning of the Policy.

State Farm now seeks relief from its admission that the Gerawan Defendants are "covered persons" under paragraph B.1 of the Policy's Liability Coverage Insuring Agreement. They are "covered persons" solely under paragraph B.3—*"only* with respect to legal responsibility for acts or omissions of Mr. Martinez." (Plaintiff's Supplemental Brief, at 2, n. 2.) Paragraph B.3. of the Policy's Liability Coverage Insuring Agreement provides, in pertinent part:

> B. **Covered person** as used in the Part means:
>
> 3. For **your covered auto,** any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

State Farm argues that under B.3, the Gerawan Defendants are legally responsible for Mr. Martinez's actions or omissions only under the doctrine of respondeat superior. If Mr. Martinez was not acting within the course of his employment, the Gerawan Defendants are not covered persons.

Defendants object to State Farm's change in position as to the status of the Gerawan Defendants under the policy. Defendants argue that State Farm has already admitted that the Gerawan Defendants were a "covered person" under B.1 in its statement of undisputed material facts. Defendants argue that any change in this admission is untimely and moot.

Defendants also argue that State Farm has failed to provide authority in support of its contention that the Gerawan Defendants cannot be legally responsible for the acts of Mr. Martinez unless they are found vicariously liable under the doctrine of respondeat superior. Defendants note that the Act is void of any reference to respondeat superior. It imposes liability on:

> any person or entity who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, or who produces or conditions seed, and who either recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker. *Citing* 29 U.S.C. § 1802(2).

Although accidents generally occurring during an employee's travels to and from work are normally not considered to have arisen within the scope of employment, federal courts in other districts adjudicating workers' compensation cases[4] have found that an exception exists where the employer provides the employee with transportation, or if employment required the employee to make the trip. *See Saintida v. Tyre,* 783 F.Supp. 1368 (S.D.Fla.1992); and *Emory v. Miller,* 790 F.Supp. 368 (D.R.I.1992).

---

4. Plaintiff correctly notes that because of the similarity between workers' compensation issues and the doctrine of respondeat superior, workers' compensation cases are helpful to the analysis. *See Alma W. v. Oakland Unified School Dist.,* 123 Cal.App.3d 133, 143, 176 Cal.Rptr. 287 (1981).

Here, Mr. Martinez and the agricultural laborers were travelling to the Gerawan Defendants' fields when the accident occurred. As a condition of the agricultural workers' employment, the Gerawan Defendants required that Plaintiffs be transported to the work site by Mr. Martinez's vehicle. (Declaration of Philip Kopp, Exhibit 2, ¶ 39, 9:18–21.) Whether the accident occurred outside of the course of employment remains a material fact in dispute.

State Farm argues that the Gerawan Defendants are not covered persons under paragraph B.1 of the Liability Coverage, but rather only under paragraph B.3 of the Policy. Therefore, Defendants are covered persons only with respect to acts or omissions of Mr. Martinez. Even if Plaintiff's statement of undisputed facts is so amended, the issue remains whether, if Mr. Martinez is liable for an accident arguably occurring during the course of employment, such liability can be imputed to the Gerawan Defendants under the doctrine of respondeat superior. State Farm has not conclusively demonstrated that coverage under Part A and B.3 of the Liability Coverage Agreement is precluded for the Gerawan Defendants with respect to legal responsibility for acts or omissions of Mr. Martinez.

### 2. Mr. Martinez was Acting within the Course of His Employment

State Farm argues that the plaintiffs in the underlying claim allege that they were employed by the Gerawan Defendants on the date of the accident, and were acting within the course of that employment. *Citing* Exhibit 2, ¶ 37, 9:26–10:8. State Farm claims that if plaintiffs in the underlying case were to prevail on the issue, and both Mr. Martinez and the workers he was transporting were employees within the course of employment at the time of the accident, exclusion A.4 would apply.

Defendants argue that State Farm's focus on what constitutes "course of employment" misses the preliminary issue—whether the Act can *only* be imposed for injuries to employees in the scope and course of employment. Defendants correctly note that liability under 29 U.S.C. § 1802(2) is much broader than for injuries to employees during the course of employment.

When Part A, Exclusion A and subpart 4 are read together, it appears that the exclusion may pertain solely to employees of the insured policy holder—that is, employees of Defendant Martinez. The exclusion reads:

A. We do not provide Liability Coverage for any person: ...

4. For bodily injury to an employee of that person during the course of employment ...

Plaintiff's amendment to its Separate Statement of Undisputed Facts clarifying that Gerawan Defendants are a "covered person" only with respect to legal responsibility for acts or omissions of Mr. Martinez lends weight to this interpretation. The "person" referred to in A.4. here, is Mr. Martinez. The "employee of that person," refers to employees of Mr. Martinez. However, the plaintiff agricultural workers in the underlying action are not alleged to have been employees of Martinez, but rather of Gerawan.

Therefore, although Paragraph A.4 of the Policy's liability coverage appears to exclude coverage "for bodily injury to an employee of that person [policy holder Martinez] during the course of employment," it does not exclude coverage for bodily injury to an employee of another person [Gerawan Defendants] during the course of employment. The Act also extends liability to one who recruits, solicits, furnishes, or transports agricultural workers. None of these acts requires an employment relationship. Liability under the Act is not coextensive with the existence of an employment relationship.

Finally, the phrase "during the course of employment" is open to interpretation. Plaintiff requested an opportunity to brief this issue, but did not do so in its supplemental brief. Any ambiguity under the policy must be construed against the insurer. *Gray v. Zurich Ins. Co.,* 65 Cal.2d at 269, 54 Cal.Rptr. 104, 419 P.2d 168. "... [T]he insured need only show that the underlying claim *may* fall within policy coverage; the insurer must prove it *cannot.* Facts merely tending to show that the claim is not covered, or may not be covered, but are

insufficient to eliminate the possibility that resultant damages (or the nature of the action) will fall within the scope of coverage, therefore add no weight to the scales." *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993). Summary judgment on the A.4 exclusion is DENIED.

## C. Duty to Defend

 Under California law an insurer must defend an action which seeks damages potentially within the coverage of the policy. *Gray v. Zurich Ins. Co.,* 65 Cal.2d at 275, 54 Cal.Rptr. 104, 419 P.2d 168. "The insurer's duty to defend is determined on the basis of any potential liability arising from the facts available to it at the time of the tender of the defense." *C.N.A. Casualty of California v. Seaboard Surety Co.,* 176 Cal.App.3d 598, 605, 222 Cal.Rptr. 276 (1986). The determination is usually made by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. *Gray v. Zurich Ins. Co.,* 65 Cal.2d at 276, 54 Cal.Rptr. 104, 419 P.2d 168. In making the determination of potential liability, a carrier is charged with notice of all facts which might be ascertained had it diligently pursued investigation. *California Shoppers, Inc. v. Royal Globe Ins. Co.,* 175 Cal.App.3d 1, 221 Cal.Rptr. 171 (1985).

The facts alleged in the underlying complaint: an insurance policy in force, an auto accident, a lack of seatbelts and safety restraints, as well as agricultural workers, all indicate potential liability. However, the duty may exist "even where coverage is in doubt and ultimately does not develop." *Montrose Chemical Corp. v. Superior Court,* 6 Cal.4th at 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153. The insurer retains the duty to defend. The motion for summary adjudication on the ground of duty to defend is DENIED.

## VII. Conclusion

For the foregoing reasons, the Plaintiff's motion for summary judgment is DENIED.

Counsel for Plaintiff shall prepare an order in conformity with this memorandum opinion and lodge it with the court within five (5) days following date of service of this opinion.

IT IS SO ORDERED.