Franklin Y. WRIGHT, Plaintiff,

v.

PAUL REVERE LIFE INSURANCE COMPANY, Defendants.

No. CV 02–4956 (GAF).

United States District Court, C.D. California.

Sept. 12, 2003.

Patricia Depew, Patricia S. Depew Law Offices, Los Angeles, CA, for plaintiff.

Stephen H. Galton, David J. Weinman, Cameron Hall Totten, Galton & Helm, Los Angeles, CA, for defendants.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

FEESS, District Judge.

## I.

### INTRODUCTION

Plaintiff Franklin Y. Wright sues defendant Paul Revere Life Insurance Company[1] to obtain benefits under a disability policy Paul Revere issued to him in 1994. Paul Revere now moves for summary judgment against Wright on all claims.

This case presents the Court with an extraordinary coincidence: Wright, a once-successful personal injury attorney, claims to have become physically disabled from the practice of law on December 19, 1997, the very same date that he was convicted of federal income tax evasion. (*Compare* DePew Decl. Exh. A (Timeline) *with* Weinman Decl. Exh. G (Verdict)). Even more peculiar, he made no claim under his disability policy at the time, and, indeed, allowed his policy to lapse by failing to pay premiums due on the policy in August 1998 and by ignoring notices that he must cure his default to prevent his policy from lapsing. In November 1999, while suspended from the practice of law by the Texas state bar for his federal criminal conviction, Texas officials brought an additional criminal case against him for stealing client

---

1. The original complaint also named as a defendant the non-existent "Paul Revere Insurance Group," and 100 Doe Defendants. As noted in the Rule 26(f) Joint Statement of the parties, the case has proceeded against the proper party, Paul Revere Life Insurance Company, which issued the policy. Since it does not appear that the Court previously dismissed the action as against the Doe defendants and Paul Revere Insurance Group, the Court now orders the case against them DISMISSED.

funds, a charge to which he eventually pled no contest. In the meantime, in early 2000, Wright suddenly "remembered" that he once had a disability policy with Paul Revere, and belatedly claimed to have become disabled in December 1997 as a result of back and hip pain, alcoholism, and depression.

To be sure, Wright had a serious substance abuse problem, but, according to his attorney, it pre-dated his criminal conviction by several decades, and the record before this Court indicates that it never precluded him from practicing law. The medical records presented by Wright reveal that, from early 1998 to the time of the filing of his disability claim in early 2000, he had long periods during which he was completely clean and sober, and in fact, he submitted to treatment at two different de-toxification facilities in 1998 and 1999. Indeed, Wright was well enough in 1999 to spend extended periods at the race track, a pastime he had time for because, in his words, "his license had been suspended until the [criminal] appeal goes through, so he [was] currently not working . . . ." (DePew Decl. Exh. A). In plain English, Wright had a legal, not a physical disability, and this bars his present claims, even assuming that his policy had not lapsed when it did.

The Court therefore **GRANTS** Paul Revere's motion for summary judgment. First, the Court concludes that Wright does not have a valid claim for disability under the policy. Second, even if the claim were valid, the policy had lapsed. Third, because Wright failed to respond to requests for admission, the requests are deemed admitted, and they concede that Wright's claims in this case are neither valid nor timely.

## II.

## FACTUAL BACKGROUND

The Court finds the following facts to be undisputed or without substantial controversy.

### A. *WRIGHT'S LEGAL PRACTICE*

For many years, Wright successfully practiced as a personal injury attorney in the state of Texas. (Ryan Decl. ¶ 14). For the three years preceding 1997, Wright's federal income tax returns reveal earnings of $1,112,367, $799,962, and $380,524. (*Id.* ¶ 14). It was during this period that Wright purchased a disability policy from Paul Revere.[2]

### B. *THE POLICY*

On December 19, 1994, Paul Revere issued a disability policy to Wright. (Statement of Undisputed Facts ("SUF") ¶¶ 1, 6; Ryan Decl. Exh. A). Under the policy, Wright was eligible to recover benefits if "*as a result of Injury or Sickness,*" he was "unable to perform the important duties of [his][o]ccupation," and was "receiving Physician's Care" therefor. (SUF ¶ 5 (emphasis added); *see also* DePew Decl. Exh. F at 3). Upon a showing of eligibility, the policy initially entitled Wright to a monthly payment of $5,000, which was increased to $5,500 as of December 1997. (Ryan Decl. ¶ 5).

Wright paid his premiums through a preauthorized check. (*Id.* ¶ 8). Premiums

---

2. Clouds, however, had appeared on the horizon much earlier. In October 1993, the Texas state bar commenced an investigation of a client complaint to the effect that Wright had failed to remit settlement proceeds to the client, and had failed to pay the client a referral fee in connection with other cases. (SUF ¶ 43). Charges were brought against Wright, and in November 1995, he was suspended from practice pursuant to an "Agreed Judgment of Probated Suspension." (*Id.* ¶ 43; Ryan Decl. ¶¶ 19–21). During the period that this issue was being resolved, Wright was engaged in conduct that would ultimately result in a state court indictment for stealing client funds. (*Id.* at Exh. 11).

were current through 1997. (*Id.* at ¶ 8; Exh. 2). Through 1997, Wright made no claim under the policy.

## C. WRIGHT'S FEDERAL CONVICTION AND SUSPENSION FROM PRACTICE

On April 30, 1997, a federal grand jury in the Western District of Texas indicted Wright for felony tax evasion. (Weinman Decl. Exh. G). In December 1997, a Texas jury found Wright guilty of conspiracy and federal income tax evasion. (*Id.*). On May 12, 1998, after considerable post-trial litigation, Wright was sentenced to 12 months in custody and three years of supervised release. (Ryan Decl. Exh. 9, at 21). Judgment was entered on May 27, 1998, and on June 4, 1998, Wright timely filed his notice of appeal. (*Id.* at 22).

Thereafter, in November 1998, following negotiation with the state bar, Wright entered into an "Agreed Interlocutory Order of Suspension" under which his license to practice law in Texas was suspended pending final appellate review of his conviction. (Ryan Decl. Exh. 10). Under the terms of the agreement, if and when the conviction became final, Wright would be disbarred. (*Id.*). Wright's appeal was unsuccessful, and his conviction became final in January 2001. (Compl. ¶ 7; Ryan Decl. ¶ 17).

## D. THE POLICY LAPSE

In the meantime, Wright's policy premium came due in August 1998. (*See id.*

Exh. 2). This required no action on Wright's part, as he had an arrangement that allowed Paul Revere to draw directly against Wright's bank account to pay the annual premium on the policy. (*Id.* ¶ 8; Exh. 2). However, without giving notice to Paul Revere, and perhaps in connection with bankruptcy proceedings filed on July 9, 1998, Wright closed his bank account before Paul Revere attempted to draw on it, late in August 1998. (*See id.* ¶ 8; Exh. 3).

When the bank refused Paul Revere's draft, Paul Revere wrote to Wright at 3107 Broadway, San Antonio, Texas 78209, one of the addresses Wright had provided on his insurance application. (*Compare id.* at Exh. 1 *with* Exh. 2). In that letter, dated September 4, 1998, Paul Revere advised Wright that: (1) the bank had refused payment on the premium draft; (2) Wright had 31 days from August 19, 1998 to pay his premium, or he would lose the policy; and (3) if the policy lapsed, he would still have an additional 26 days to pay the premium and reinstate coverage. (*Id.* Exh. 2). The letter concluded:

> We urge you to contact your agent or our office as soon as possible at 1–800–799–0990, to discuss the status of your policy(s) and your premium payment option should you wish to continue your valuable Paul Revere insurance.

(*Id.*). Wright did not respond to the letter.[3] Paul Revere received no premium pay-

---

3. In his opposition, Wright argues that he did not receive this letter. However, he offers no competent evidence to raise an issue of fact for trial on this point. Rather, his only support for this claim is the following statement by his attorney:

> Franklin Wright never received a letter from Paul Revere dated August 1998 [*sic*] which informed him that his disability payment had not been honored by his bank nor that he would have 26 days after that to pay the premium and reinstate his coverage.

(DePew Decl. ¶ 11). Since DePew, a California lawyer, offers no foundation for her knowledge of whether Wright did or did not receive a letter from Paul Revere, she is either repeating what she has heard from others and is offering it for its truth (hearsay), or she is making it up. In either case, the statement is not admissible and cannot serve to contradict the otherwise undisputed evidence obtained from Paul Revere's business records.

ments from Wright in either 1998 or 1999. (*Id.* ¶¶ 8–9).

### E. WRIGHT'S THEFT INDICTMENT AND CONVICTION

Wright's legal problems did not end with his federal conviction. On November 17, 1999, Wright was indicted in Texas state court for misappropriating as much as $100,000 in client money. (*Id.* Exh. 11). The indictment alleged that, from March 1996 through August 1998, Wright misappropriated between $20,000 and $100,000, which he held for the benefit of certain of his clients. (*Id.*). In or about 2001, Wright pleaded no contest to these charges. (*Id.* ¶ 19). By that point, his federal criminal conviction had been affirmed on appeal, and he was disbarred in Texas.

As Wright had effectively destroyed his Texas legal career, he move to Malibu, California in September 1999. (SUF ¶ 35). As of that date, and indeed as of his indictment in November 1999, he had not made a claim on his long-lapsed Paul Revere disability policy. However, that was about to change. In a document dated December 28, 1999, and received by Paul Revere on January 3, 2000, Wright made a claim for disabilities, which he asserted arose two years earlier, in December 1997. (Ryan Decl. Exh. 4; Exh. 7). In that claim, Wright stated, "left hip/back & mental depression keep me from working & alcoholism." (*Id.*). Nothing in this original claim revealed anything about Wright's legal problems, nor the bearing those problems had on his ability to earn a living.[4]

After the claim was filed, Wright was interviewed in a telephone call placed by Hope Troilo, an employee of Paul Revere. (*See* DePew Decl. Exh. A (Claimant Telephone Interview)). In that interview, Wright again claimed that his disability was caused by "alcoholism, depression, hip & back problems." (*Id.*). Wright, however, was not totally candid with Troilo in describing all of the circumstances confronting him. For example, while he mentioned that he had ongoing "proceedings" with the IRS and "lawsuits" from former clients, he failed to disclose that his tax problems involved a conviction for tax evasion or that the problems with his clients manifested themselves in a criminal indictment in San Antonio, Texas. (*Id.* Exh. A (Claimant Interview Form, at 4)). And while he conceded that his license to practice had been suspended, he lied to Troilo, stating that it was "due to missed court appearances, 'that kind of thing.'" (*Id.* at 6). Wright embellished that statement with his supposed belief that "he does not feel he will have difficulty having it [his license] reinstated." (*Id.*). Nothing in the interview reveals that, if and when his federal conviction was affirmed, Wright would be entirely precluded from the practice of law.

The interview also provides Wright's "explanation" for the late notice of his claim. Wright stated that he "didn't think he was 'disabled'" and that he "forgot about the policy." (*Id.* at 5).

Following an investigation, Paul Revere denied Wright's claim in a letter dated May 11, 2000. (SUF ¶ 47). The denial letter stated that Wright's policy had lapsed as of August 19, 1998, and, in addition, his claim was filed two years late. (DePew Decl. Exh. I at 7). The letter also

---

4. Wright apparently had forgotten that he had told one of his healthcare providers about nine months earlier that he was not working because of his suspension from the practice of law while his criminal appeal was pending. (DePew Decl. Exh. A (4/21/99 Medical Intake Evaluation Form)). He also neglected to mention, as he did in an interview on May 28, 1998, that at that time "he had remarkably few complaints," and that he was having no difficulty with his back or hip. (*Id.* at PRL CL 00238).

informed Wright that—regardless—Paul Revere's investigation suggested that Wright's alleged medical problems were not the proximate cause of his inability to practice law and that he had not been under regular physician care for his alleged disabilities during the relevant period, as the policy requires. (*Id.*). After Wright requested reconsideration of his claim, Paul Revere upheld its original denial of benefits. (SUF ¶ 49).

### F. WRIGHT MOVES TO CALIFORNIA AND FILES A DISABILITY CLAIM

Wright subsequently filed this action on September 21, 2001, alleging claims for breach of insurance contract and breach of the duty of good faith and fair dealing. (Not. of Removal, Exh. A). Paul Revere timely removed the action to this Court, asserting diversity jurisdiction, and sent discovery requests, to which Plaintiff did not timely respond. (Mot. at 1). Paul Revere now moves for summary judgment and notes that, pursuant to Federal Rule of Civil Procedure 36(a), the requests for admission to which Wright did not timely respond should be deemed admitted and conclusively established. (*See* DePew Decl. Exh. D at 7, E at 6; Mot. at 1); FED. R. CIV. P. 36(a).

### III.

### ANALYSIS

### A. THE LEGAL STANDARD UNDER RULE 56

On motion for summary judgment under Federal Rule of Civil Procedure 56, this Court must decide whether there exist "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Moreover, when the non-moving party bears the burden of proving an element essential to its case, it must make a showing sufficient to establish a genuine issue of fact with respect to the existence of that element of the case or be subject to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

An issue is genuine if there is evidence produced that would allow a reasonable jury to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. The Court will assume the truth of direct evidence set forth by the non-moving party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir.1992). But where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505; *T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631–32 (9th Cir.1987). In that regard, "[a] mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather the nonmoving party must introduce some significant probative evidence tending to support the claim.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir.1997) (quoting *Anderson*, 477 U.S. at 252, 249, 106 S.Ct. 2505); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288 (9th Cir.1987) (quoting *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505) (summary judgment may be granted if "the evidence is merely colorable ... or is not significantly probative"). Thus, if a defendant moves for summary judgment and establishes that the undisputed facts prove that the plaintiff's case lacks one of its essential elements, the motion must be granted.

## B. BURDENS OF PROOF UNDER CALIFORNIA INSURANCE LAW[5]

Under California law, an insured claiming benefits bears the burden of proving that he is entitled to coverage under the relevant policy. *Aydin Corp. v. First State Ins. Co.*, 18 Cal.4th 1183, 1188, 77 Cal.Rptr.2d 537, 959 P.2d 1213 (1998). Once the insured has met that burden, the insurer bears the burden of proving that a claim is within an exclusion to the contract. *State Farm Mut. Auto. Ins. Co. v. Martinez–Lozano*, 916 F.Supp. 996, 1002 (E.D.Cal.1996). Thus, to prevail in its summary judgment motion, Paul Revere need only show that Wright has provided no evidence to support his causes of action, or that Wright's disability claim falls within an exclusion to the disability insurance contract.

## C. THE ADMISSIONS TO WHICH PLAINTIFF DID NOT TIMELY RESPOND ARE DEEMED ADMITTED UNDER FEDERAL RULE OF CIVIL PROCEDURE 36

When a party seeks discovery pursuant to Rule 36(a), a "[f]ailure to timely respond to requests for admissions results in automatic admission of the matters requested." *FTC v. Medicor, LLC,* 217 F.Supp.2d 1048, 1053 (C.D.Cal.2002); FED. R. CIV. P. 36(a). "No motion to establish the admissions is [necessary] because Federal Rule of Civil Procedure 36(a) is self executing." *Medicor, LLC,* 217 F.Supp.2d at 1053. Once admitted, the Court may, upon motion, permit withdrawal or amendment of the admission if doing so will serve

to present the matter on the merits and will not prejudice the party seeking the admission. FED. R. CIV. P. 36(b). However, the Ninth Circuit has warned district courts to be "cautious in exercising their discretion to permit withdrawal or amendment of an admission." *999 v. C.I.T. Corp.,* 776 F.2d 866, 869 (9th Cir.1985).

In this case, Wright did not timely respond to Defendant's properly served requests for admissions. In addition, Wright never filed a properly noticed motion to withdraw the admissions. Accordingly, the admissions to which Wright did not properly respond are deemed admitted.

These admissions support Defendant's motion for summary judgment. (*See* Weinman Decl. Exh. B). For example, Wright did not deny any of the following requests for admission served on him by Paul Revere:

(1) That the disability policy lapsed for nonpayment of premiums on August 19, 1998;

(2) That Wright resided and maintained a business address at 3107 Broadway, San Antonio, Texas (the address to which the notice of nonpayment of premiums was sent);

(3) That in September 1998 Wright received notice that the premium payment due on the policy had not been paid, and that he had not in fact made such payment;

(4) That Wright did not comply with the proof of loss provisions of the disability policy;

---

**5.** Although the parties did not brief the issue or raise it at oral argument, the Court has considered whether the choice of law doctrine calls for application of Texas law in this diversity action, rather than California law, given that the policy at issue was executed in Texas by a then-resident of Texas. Having considered this issue, the Court observes that California and Texas laws do not meaningfully differ as applied to this matter. *See, e.g., State* *Farm Mut. Auto. Ins. Co. v. Martinez–Lozano,* 916 F.Supp. 996 (E.D.Cal.1996); CAL. INS. CODE § 10350.11; TEX. INS. ART. 3.70–3(A)(7), (11). On this basis, the Court concludes that there is no true conflict of laws, and it applies California law throughout this opinion. *See Hurtado v.Super. Ct.,* 11 Cal.3d 574, 580, 114 Cal.Rptr. 106, 522 P.2d 666 (1974) (noting that there is no choice of law problem where two states' laws do not conflict).

(5) That his claim was barred by the statute of limitations;

(6) That he had not been under a "Physician's Care" as defined in the policy;

(7) That he had not been "totally disabled" as that term was defined in the disability policy at issue in this case; and

(8) That the "disability" that prevented Wright from performing the material duties of his occupation was the result of his criminal convictions, which rendered him legally unable to perform those duties, and not the result of any sickness or injury.

(*Id.*).

These admissions, without more, would be grounds for determining that the undisputed facts in this case warrant the entry of judgment in favor of Paul Revere. However, as discussed below, even without these admissions, the Court would conclude, on the undisputed facts, that Defendant is entitled to summary judgment.

**D. PLAINTIFF'S POLICY LAPSED PRIOR TO HIS CLAIM**

 Wright's disability policy states that "[i]f the premium is not paid when it is due or within the grace period, the Policy will lapse." (Ryan Decl. Exh. 1 at 12). "An express provision of an insurance contract stipulating that a default in payment renders the policy void or causes it to lapse is valid, and a default in such payment ordinarily forfeits the policy where statutory provisions are not violated." *See Klotz v. Old Line Life Ins. Co. of Am.,* 955 F.Supp. 1183, 1186 (N.D.Cal. 1996) (citing *Scott v. Fed. Life Ins. Co.,* 200 Cal.App.2d 384, 391–92, 19 Cal.Rptr. 258 (1962)). These cases recognize that an insurance company may waive its right to enforce such a lapse provision. However, "to constitute a waiver there must be an existing right, a knowledge of its existence, and an actual intention to relinquish it, or

conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *Id. Klotz* described the kind of conduct that could constitute a waiver in the present context:

> California courts have consistently held that negotiations with an insured after an automatic lapse may under some circumstances operate as a waiver. When an insurance company, with knowledge of a default for which it might terminate insurance coverage, enters into negotiations or transactions with the insured, recognizing the continued validity of the policy and treating it as still in force, the right to claim a forfeiture for any previous default is waived.

*Id.* (citation omitted).

No such conduct occurred in this case. When Paul Revere did not receive payment of its premium, it gave notice to Wright that the policy had lapsed, advised him of his rights under the policy, and explained how long he had to exercise those rights. That notice, set forth in a letter of September 4, 1998, was Paul Revere's only contact with Wright after his default. The time limits described in the letter passed; Wright did not cure the default, and the policy lapsed.

Wright does not argue that Paul Revere's conduct constituted a waiver of its right to cancel the policy, and presents no persuasive evidence to challenge the conclusion that his policy lapsed for non-payment of premiums more than two years before he filed his claim. Although Wright alludes in passing to the waiver of premium payment section in the policy, that section only waives the premiums due while the insured is disabled. (Ryan Decl. Exh. 1 at 13). However, as discussed below, Wright was not disabled as defined under the policy, because injury or sickness did not cause his inability to work,

and he was not under regular physician's care. (*See id.* at 6–7). Accordingly, the Court finds that Wright has no current right to benefits under the policy, because it lapsed for nonpayment of premiums.

### E. PLAINTIFF'S DISABILITY IS AN UNCOVERED LEGAL DISABILITY, NOT A COVERED MEDICAL DISABILITY

To qualify for disability benefits under the policy, Wright would have had to show "as a result of Injury or Sickness," he was "unable to perform the important duties of [his][o]ccupation," and was "receiving Physician's Care" therefor. (SUF ¶ 5; DePew Decl. Exh. F at 3). Under applicable California insurance law, "[i]t is a general rule that disability insurance policies ... provide coverage for factual disabilities (i.e. disabilities due to a sickness or injury) and not for legal disabilities." *Provident Life & Accident Ins. Co. v. Fleischer,* 26 F.Supp.2d 1220, 1223–24 (C.D.Cal.1998) (quoting *Goomar v. Centennial Life Ins. Co.,* 855 F.Supp. 319, 325 (S.D.Cal.1994), *aff'd* 76 F.3d 1059 (9th Cir. 1996)). *See also Mass. Mut. Life Ins. Co. v. Millstein,* 129 F.3d 688, 691 (2d Cir. 1997) ("[A] rule which would allow a lawyer to steal from his clients, even when such theft occurs in the throes of a drug addiction, and then recover disability benefits for income lost due to the suspension resulting from the theft, would be against public policy."). Thus, courts have generally sustained denials of disability claims where the insured's legal disability arose before her alleged medical disability. *Id.*

In this case, the facts alleged in Wright's complaint indicate that his legal disability—his indictment and arrest for felony tax evasion in the spring of 1997, which ultimately resulted in his license being suspended—arose before his alleged physical disability, (compl.¶¶ 5, 8), even though final judgment in his criminal case and his final disbarment occurred afterwards. Documents submitted by Wright, which contain his contemporaneous statements made in 1998 and 1999, establish that he had stopped working, not because of injury or sickness, but because of his legal problems. For example, in May 1998, Wright explained to intake personnel at the La Hacienda Treatment Center that he was "currently not working" because of his federal income tax charge, (DePew Decl. Exh. A at PRL CL00235), not because of any physical disability. Again in April 1999, in an interview with a medical provider at La Hacienda, the following was recorded:

> Legal prob: He has been charged with Tax Evasion. He, his wife and accountant were charged. He states the case is on appeal. He has been a lawyer in Private Practice for the past 25 years *but states his license had been suspended until the appeal goes through, so he is currently not working* and he has had financial prob as well.

(*Id.* Exh. A) (emphasis added). At no time did Wright complain that his substance abuse or the problems he had with his back and hip precluded him from the practice of law. Those assertions were not made until he presented his claim in January 2000.

In addition, the Court notes the following undisputed facts have been established in the record before the Court:

(1) According to Wright's attorney, Wright began drinking on a daily basis in 1962—almost 40 years before the disability claim made in this case. (*Id.* (Timeline)).

(2) During periods of heavy drinking in 1994 through 1996, Wright earned substantial six-figure incomes, including an income of more than $1,000,000 in 1994. (SUF ¶ 29).

(3) Although Wright admitted himself to the Starlite Village Hospital for four days of treatment in March 1997, his

stay did not preclude him from practicing law thereafter in 1997. Indeed, according to medical records from Wright's March 1997 treatment at Starlite, he had been drinking extremely heavily for the prior five years, during which he was active in the practice of law. (DePew Decl. Exh. A (Provisional Diagnosis) at PRL CL00173).[6]

(4) After his conviction in December 1997, he was treated for his alcoholism on four separate occasions: December 23—26, 1997; May 28—June 27, 1998; December 6—8, 1998; and May 21–23, 1999. Wright has submitted no evidence that he was under a "Physician's Care" within the meaning of the policy during that period (i.e., under "the regular and personal care of a Physician which, under prevailing medical standards, is appropriate for the condition causing the disability"). (Ryan Decl. Exh. 1, at 6).

(5) In comparison with his substance abuse during the five years preceding his December 1997 conviction—years when he practiced law—Wright's condition in 1998 and 1999 was significantly improved. According to the medical records Wright supplied, he had extended periods of time between hospital visits when he was completely clean and sober. For example, according to Wright's medical records, between June 27, 1998 and April 21, 1999, he drank alcohol on only two occasions—around December 6, 1998 and just prior to April 21, 1999. The April 1999 incident arose

after he won $2,000 at the race track. (DePew Decl. Exh. A at PRL CL 00243). Thus, Wright had 10 months of almost total sobriety in comparison to the five years of intoxication that preceded his March 4, 1997 admission to Starlite.

(6) As suggested by the preceding comment, Wright's alleged disabilities hardly incapacitated him. When he spoke with medical personnel on April 21, 1999, he advised them that he had "been to the track numerous times in the past few months." (*Id.*).

In sum, the undisputed facts in the record now before the Court make clear that Wright stopped working after December 1997 not because any sickness or injury prevented him from working during that period but because he was legally prohibited from practicing his profession. The record demonstrates that Wright was more sober during the two years after his conviction and prior to the submission of his disability claim, than he was during the last five years of his legal practice, when he earned well over $2 million. The Court has no doubt that, had he been legally permitted to practice then, or any time since then, Wright was physically capable of practicing law.[7] Accordingly, Wright's legal disability rather than his medical disability precluded him from practicing law, and under the terms of the policy he was not disabled and therefore not entitled to benefits, even if the policy had not lapsed.

---

6. In this document, the author reports that "[Wright] drinks 5 ounces of tequila and beer at the office during the day, at home 2 or 3 more beers, and at least 2 or 3 shots of tequila in the evening. He passes out frequently and he has blackouts. This has been going on for the last 5 years ...." (DePew Decl. Exh. A (Provisional Diagnosis) at PRL CL00173).

7. Likewise, nothing in the record suggests that Wright's back or hip problems curtailed

his activities in any way. Wright's May 27, 1998 Hacienda Treatment Records state that "P[atient] has remarkably few complaints ... He denies any current back pain and states, "It hasn't hurt for a while ... Patient's left hip is also not bothering him at the moment." (DePew Decl. Exh. A at PRL CL 00238). As noted, Wright's purported physical ailments certainly did not prevent him from traveling to and from the track and attending races.

### F. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS TIME-BARRED

■ California Insurance Code §§ 10350.1 through 10350.12 set out provisions "which must be included in every disability policy, unless different wording is approved by the Insurance Commissioner." *CBS Broad. Inc. v. Fireman's Fund Ins. Co.*, 70 Cal.App.4th 1075, 1082, 83 Cal.Rptr.2d 197 (1999); CAL. INS. CODE § 10350. California Insurance Code § 10350.11 provides in pertinent part that "[n]o action at law or in equity shall be brought ... after the expiration of three years after the time written proof of loss is required to be furnished."

The Ninth Circuit has held that this provision does not state a statute of limitations for insurance contracts—which instead are governed by the four year statute of limitations for written contracts embodied in California Code of Civil Procedure § 337. *Wetzel v. Lou Ehlers Cadillac Group Long Term Disability Ins. Program*, 222 F.3d 643, 647–48 (9th Cir. 2000). However, the Ninth Circuit stated that "the provisions [limiting the time in which suit may be brought under a disability contract] create enforceable contractual limitations periods for bringing suit on an insurance contract." *Id.*

Wright brought his suit more than three years after written proof of loss was required under his policy and has provided no evidence to support any contractual defense. Wright's policy requires that written proof of loss be provided within 90 days after the end of each period for which benefits are sought unless not reasonably possible. (Ryan Decl. Exh. 1 at 16). The policy states that "unless You are legally incapacitated, written proof must be given within one year of the date it was required." (*Id.*). In this case, Wright's claim was filed almost two years after proof of loss was required, and Wright did not provide proof of legal incapacity, or at least not continuous incapacity, throughout the time it took him to file his claim. Accordingly, Defendant is also entitled to summary judgment on the grounds that Wright's suit is barred by the policy's private statute of limitations.

Finally, as the Court found that benefits under the policy were withheld for cause— that is Wright has no right to benefits under the policy—Wright's bad faith claim fails as a matter of law. *Love v. Fire Ins. Exch.*, 221 Cal.App.3d 1136, 1151–53, 271 Cal.Rptr. 246 (1990).

### IV.

### CONCLUSION

In sum, the Court finds no genuine issue of material fact for trial given the undisputed facts of record. Paul Revere was justified in denying Wright's disability claim and is entitled to judgment in this matter. Therefore, the Court **GRANTS** Paul Revere's motion for summary judgment in its entirety.

Defendant is to prepare and submit a form of judgment for the Court's signature within 10 days of receipt of this memorandum and order.

IT IS SO ORDERED.